**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL J. DAUGHERTY and LABMD, INC., | ) ) | |
| | ) | Civil Action No. 17-368 |
| Plaintiffs, | ) ) | District Judge Marilyn J. Horan |
| | ) | Magistrate Judge Maureen P. Kelly |
| v. | ) ) | |
| JOEL P. ADAMS, DAVID J. BECKER, | ) | Re: ECF Nos. 261, 264, 267, 270, 272 |
| ROBERT J. BOBACK, ANJU S. CHOPRA, | ) | and 274 |
| WESLEY K. CLARK, SR., JOHN C. | ) | |
| HANSBERRY, SAM P. HOPKINS, M. ERIC | ) | |
| JOHNSON, ERIC D. KLINE, DANIEL J. | ) | |
| KOPCHAK, LARRY PONEMON, | ) | |
| HOWARD SCHMIDT, KEITH E. | ) | |
| TAGLIAFERRI, BRIAN J. TARQUINIO, | ) | |
| MORGAN LEWIS AND BOCKIUS, LLP, | ) | |
| PEPPER HAMILTON LLP, TIVERSA | ) | |
| HOLDING CORP., TRUSTEES OF | ) | |
| DARTMOUTH COLLEGE, and DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

This action arises out of allegations that Defendants victimized Plaintiff LabMD, Inc. ("LabMD") through a purported shakedown scheme involving the theft of electronic data. Presently before the Court are Motions to Dismiss filed by Defendants M. Eric Johnson ("Johnson") and the Trustees of Dartmouth College ("Dartmouth") (collectively, the "Dartmouth Defendants"), ECF No. 261; Defendants Joel P. Adams ("Adams"), David J. Becker ("Becker"), Anju S. Chopra ("Chopra"), Wesley K. Clark, Sr. ("Clark"), Sam P. Hopkins ("Hopkins"), Daniel J. Kopchak ("Kopchak"), Larry Ponemon ("Ponemon"), Howard Schmidt ("Schmidt"), Keith E.

Tagliaferri ("Tagliaferri"), and Brian J. Tarquinio ("Tarquinio") (jointly, the "Individual Defendants"), ECF No. 264; Defendant Pepper Hamilton LLP ("Pepper Hamilton"), ECF No. 267; Defendant Tiversa Holding Corp. ("Tiversa"), ECF No. 270; Defendants Eric D. Kline ("Kline") and Morgan, Lewis and Bockius  LLP ("Morgan Lewis"), ECF No. 272; and Defendant Robert J. Boback ("Boback"), ECF No. 274.  All Defendants move to dismiss for failure to state a claim pursuant to Rule 12(b)(6).   In addition, the Dartmouth Defendants and Defendants Clark, Ponemon, and Schmidt move to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). ECF Nos. 261, 264.

For the following reasons, it is respectfully recommended that the Motions to Dismiss be granted.

## II.    REPORT

### A.    FACTUAL BACKGROUND

Plaintiff LabMD is a cancer-detection facility based in Atlanta, Georgia, and Plaintiff Michael J. Daugherty ("Daugherty") is its chief executive officer ("CEO") and sole shareholder. ECF No. 1 ¶¶ 3, 8.  This action arises out of allegations that Tiversa, a cybersecurity firm based in Pittsburgh, Pennsylvania, used its technologies to access, download, and steal from LabMD a confidential file (the "1718 File") with personal health records of approximately 9,300 LabMD patients in February 2008.  Id. ¶¶ 1, 150.  Plaintiffs allege that LabMD was a victim of a racketeering scheme in which Tiversa turns its "victims" into customers by selling them services to remedy the security breaches that Tiversa created.  Id. ¶ 60.  As part of this scheme, Tiversa retaliates against targets that do not purchase Tiversa's services by reporting them to law enforcement agencies.  Id. ¶ 61.

### 1.  Theft of the 1718 File

Plaintiffs allege that in February 2008, Tiversa electronically accessed computer files, including the 1718 File, from LabMD's computer in Atlanta, Georgia.  Id. ¶¶ 150, 152.  On May 13, 2008, Defendant Boback, the CEO of Tiversa, called John Boyle ("Boyle") of LabMD.  Id. ¶ 174.  Boback claimed to have detected and downloaded the 1718 File from a peer-to-peer ("P2P") network, and he further claimed that he did not know the source of the file or when it was obtained by Tiversa.  Id.

Immediately after Boback's March 2008 call, LabMD conducted an investigation and determined that the 1718 File was inadvertently available on one of its computers because a LabMD employee had installed P2P software on a LabMD billing computer, in violation of company policy.  Id. ¶ 175.  LabMD removed the P2P software from its computer.  Id.

Tiversa and Boback continued to communicate with LabMD regarding the 1718 File.  Later in the day on May 13, 2018, Boback sent an email to LabMD falsely claiming that: the 1718 File was continuously available on a P2P network over the past several months, and that Tiversa's computer system did not record the IP address of where the 1718 File had been located.  Boback further noted that, even if Tiversa had the actual source IP address, it was not readily available to Tiversa and would take "some time" to locate the information.  Id. ¶ 176.

On May 15, 2008, LabMD requested that Tiversa provide data store logs and identify dates that Tiversa claimed the 1718 File had been made available on P2P networks.  Id. ¶ 177.  However, Plaintiffs allege that Tiversa refused to disclose this information unless LabMD paid a service agreement fee.  Id. ¶ 178.  In emails over the next several months, Boback told LabMD that it needed to act quickly to avoid the file from "spreading," that it was likely the file had been "taken

by secondary disclosure points," which needed to be found and remediated, and that Boback "continued to see individuals searching and downloading copies of the file." Id. ¶¶ 179-181.

Plaintiffs claim that, at all times, Tiversa and Boback knew that Tiversa had hacked into LabMD's computer and stolen the information. Id. ¶ 182. Nevertheless, they continued to lie to LabMD and cause it unnecessary harm. Id. ¶ 183.

Plaintiffs allege that Tiversa's communications became increasingly "heavy handed," and they began to include Tiversa's attorneys. Id. ¶ 188. On July 23, 2008, Boback sent an email to LabMD's outside counsel with a copy to Defendant Kline, then an attorney with Defendant Morgan Lewis.[1] Id. The email requested that LabMD and its counsel "confirm that [it is] in compliance with state and federal breach notification laws regarding the disclosure of the estimated 9000 SSNs of the patients that have received services by LabMD." Id. On November 21, 2008, LabMD received a call from a Tiversa attorney with the Cook Law Group implying that Tiversa was in discussions with the FTC about the 1718 File. Id. ¶¶ 189-90. The attorney stated that Boback and Tiversa were concerned that if they did not inform the FTC about the leak, they may be sued for having knowledge of a breach and not reporting it. Id. ¶ 190.

LabMD refused to pay Tiversa. Id. ¶ 191. According to Plaintiffs, Tiversa retaliated by placing LabMD on a list, along with 90 other companies it was allegedly extorting with threats of exposure to the FTC. Id. ¶¶ 89, 191. In addition to LabMD, Plaintiffs detail allegations regarding a similar attempted shakedown scheme that Tiversa waged on other businesses in 2008, including

---

[1] In their Complaint, Plaintiffs assert that Boback sent this email with a copy to "Kline and Morgan Lewis," but it appears Plaintiffs are simply indicating that Kline was then an attorney with Morgan Lewis. The exhibit Plaintiffs cite only includes a copy to Kline at his Morgan Lewis email address. ECF No. 1-10.

Coca-Cola, Papa John's, Logisticare, Franklin's Budget Auto Sales, Georgia Music Educators Association, and the Open Door Clinic.  Id. ¶¶ 229-306.

Before sending the list to the FTC, Boback testified in front of Congress concerning P2P networks on May 5, 2009.  Id. ¶ 210.  In his prepared statement, Boback highlighted LabMD's stolen file as an example of medical information leaked on a P2P network.  Id.  According to Plaintiffs, this was done to further instigate the FTC into investigating and prosecuting LabMD. Id.

Plaintiffs allege that, throughout LabMD's dealings with Tiversa, Plaintiffs sought legal counsel from at least 24 lawyers between May 13, 2008 and April 2, 2014.  Id. ¶ 307.  Plaintiffs allege that none of these lawyers informed Plaintiffs they might have a claim against Tiversa for fraud, negligent misrepresentation, defamation, tortious interference with actual or prospective contracts, or federal or state RICO claims before April 2, 2014.  Id. ¶¶ 311-319.

### 2.  The FTC's Relationship with Tiversa

Plaintiffs claim that Tiversa's tactic of allegedly stealing confidential information and blackmailing the victims with threats of reporting them to the FTC is part of a pattern.  According to the Complaint, in 2008 and 2009, Tiversa began compiling a list of approximately 90 companies (including LabMD) that initially refused Tiversa's services.  Id. ¶ 89. Tiversa allegedly threatened to report some or all of those companies to the FTC.  Id. ¶ 90.

Plaintiffs allege that the FTC and Tiversa were working together regarding issues of leaked confidential information.  Around 2009, Tiversa became concerned about its cooperation with the FTC becoming too public.  As a result, Defendants Tiversa, Boback, Kline, Morgan Lewis and Tarquinio, along with the FTC, agreed that Tiversa would create a shell company to cooperate with the FTC.  Id. ¶ 94.  The shell company was incorporated on June 3, 2009 and was called The

Privacy Institute.  Id. ¶ 95.  The FTC served its civil investigative demand on The Privacy Institute, instead of Tiversa, and The Privacy Institute provided documents to the FTC.  Defendant Tarquinio was the sole director and officer of The Privacy Institute.  Id. ¶ 172.

According to the Complaint, in 2014, Congress began an investigation into Tiversa's business practices and its relationship with the FTC.  Id. ¶ 399.  Plaintiffs allege that Tiversa produced a false document prepared by Boback and Tagliaferri and that Boback testified regarding the same, however, Plaintiffs do not identify what in the document was false.  Id. ¶¶ 418-419.

As a result of its investigation, the United States House of Representatives Committee on Oversight and Government Reform determined on January 2, 2015 that: (1) Boback had provided false testimony to House of Representatives; (2) contrary to Boback's testimony, Defendant Schmidt played a large role in actively seeking contracts and potential clients for Tiversa; (3) the House Committee could not take any information provided by Tiversa at face value and that its relationship with the FTC was "extremely concerning"; (4) its involvement with LabMD raised questions about Tiversa's coercive business practices and Tiversa's relationship with the FTC; and (5) Boback lied about material information in an FTC enforcement action.  Id. ¶ 399; ECF No. 1-1.

### 3. The FTC's Investigation of LabMD

On January 19, 2010, Alain Sheer ("Sheer") of the FTC informed LabMD that the agency had begun a non-public inquiry into LabMD's cybersecurity practices.  ECF No 1 ¶ 212.  Sheer informed LabMD that they received information that a LabMD computer file or files were available to users on a P2P network, and that that the file contained sensitive information that could be used to commit identity fraud or other harm.  Id. ¶ 213; ECF No. 2-2.  LabMD alleges that it found the timing and fact of the FTC's inquiry "odd" because the episode involving Tiversa and

the 1718 File had concluded over a year earlier, and LabMD had "*completely resolved* the issue when it removed the P2P software from its billing computer" on May 13, 2008.  ECF No. 1 ¶ 214. Sheer's letter did not disclose Tiversa as the source of the report, or the FTC's relationship with Tiversa.  Id. ¶ 213.

The FTC investigated LabMD for over three and a half years.  Id. ¶ 216.  Plaintiffs claim that the FTC would not have investigated LabMD but for Tiversa's theft of the 1718 File and its false statements involving that incident, and that the FTC investigation "all but destroyed LabMD." Id.  LabMD was required to produce current and former employees and thousands of documents, its insurers cancelled all of the insurance coverage for LabMD and its directors and officers, and LabMD lost virtually all of its patients, referral sources, and workforce.  ECF No. 293 at 16 (citing response in RICO Case Statement filed in LabMD v. Tiversa Holding Corp., No. 15-92 (W.D. Pa. Jan. 21, 2015), at ECF No. 19).  As a result, LabMD was "effectively forced out of business by January 2014, and it now operates as an insolvent entity that simply provides records to former patients."  Id.

On July 19, 2013, Daugherty announced the publication of his book, *The Devil Inside the Beltway*, about his negative interactions with the FTC and Tiversa.  Id. ¶ 221.  Three days later, Sheer told LabMD that the FTC would file an administrative enforcement action against it (the "Enforcement Action").  Id.  On August 28, 2013, the FTC filed the Enforcement Action.  Id. ¶ 222.

According to the Complaint, the Enforcement Action relies almost exclusively on the allegedly stolen 1718 File and Tiversa's allegedly false claims.  Id. ¶ 11.  Plaintiffs allege that Boback and Chopra provided false testimony in the Enforcement Action.  Id. ¶¶ 405-08, 412-15,

409-10.  Plaintiffs assert that the FTC would not have prosecuted LabMD but for Tiversa's lies and the theft of the 1718 File.

Plaintiffs further allege that, during the Enforcement Action, the FTC subpoenaed Tiversa to produce two Incident Reports concerning LabMD's "leaked" information.  Plaintiffs claim that these reports showed that Tiversa found the 1718 File on a LabMD computer at LabMD's IP address in Atlanta, Georgia, and not on a P2P network.  Id. ¶¶ 380, 385.  Tiversa refused to produce the reports to the FTC in response to subpoenas.  Id. ¶ 381.  Additionally, Plaintiffs allege that Tiversa failed to produce an internal email dated September 5, 2013 from Boback to Kopchak, Tiversa's chief financial officer, where Boback admits that the 1718 File was taken from a LabMD computer in Atlanta, Georgia.  Id. ¶ 390.

On April 2, 2014, a former Tiversa employee, Richard Wallace ("Wallace") exposed Tiversa's allegedly illegal scheme to the FTC.  Id. ¶ 13. Plaintiffs allege that Wallace had been fired from Tiversa for refusing to lie under oath regarding Tiversa's alleged illegal activity.  Id. ¶ 332.  Wallace testified at the Enforcement Action that Tiversa hacked into LabMD's computer and stole the 1718 File.  Id. ¶ 334.  Wallace also testified that it was Tiversa's practice to manipulate data to make prospective customers/victims believe that their data had spread to other locations. Id.  He testified that Tiversa compiled the list to give to the FTC so that, when the FTC contacted the company regarding a data breach, they would hire Tiversa.  Id.  Plaintiffs assert that Wallace's testimony caused the FTC to withdraw its reliance on Tiversa's fraudulent report.  Id. ¶ 13.

On November 13, 2015, the administrative law judge in the Enforcement Action ruled in favor of LabMD.  Id. ¶ 14.

### 4. LabMD Sues Tiversa in Georgia

On October 19, 2011, LabMD filed suit against Tiversa and the Dartmouth Defendants in the Superior Court of Fulton County, Georgia ("*Georgia I*"), and the action was removed to the United States District Court for the Northern District of Georgia. Id. ¶ 324. In *Georgia I*, LabMD asserted claims for violations of the Computer Fraud and Abuse Act (18 U.S.C. § 1030) and violations of O.C.G.A. § 16-9-3 for computer crimes, conversion, trespass, and punitive damages. Id. ¶ 325. Defendants Hansberry and Pepper Hamilton were counsel of record for Tiversa in *Georgia I*. Id. ¶ 338. Although he was not counsel of record, Plaintiffs also allege that Kline was involved in representing Tiversa in *Georgia I*. Id. ¶ 339.

Tiversa successfully moved for dismissal based on lack of personal jurisdiction. In support of its Motion to Dismiss, Tiversa filed a declaration from Boback (the "Boback Declaration"). Id. ¶ 342. Under penalty of perjury, Boback declared that Tiversa does not regularly solicit business in Georgia. Id. ¶ 344. He further declared that neither Tiversa nor its employees have ever conducted business in Georgia, engaged in a persistent course of conduct in Georgia, or derived any revenue from the rendition of services in Georgia, and particularly not in any way related to LabMD's allegations. Id. ¶ 345. These statements were allegedly transmitted in the mail or via wire from Pittsburgh to Atlanta on or about December 1, 2011. Id. ¶ 350.

Plaintiffs allege that Boback and Tiversa's attorneys knew that the statements were false. Id. ¶ 348. In particular, Plaintiffs allege that Boback and the attorneys knew that Tiversa solicited business from at least five other companies; that Boback, Kopchak, Wallace, Adams, and at least one other Tiversa employee had traveled to Atlanta, Georgia for several days to network and solicit business for Tiversa on March 29-31, 2010; that Boback and Adams spoke at an executive training conference in Atlanta on March 31, 2010; that, during this same trip, Boback had lunch with Robin

Meade, the lead anchor at HLN to obtain publicity for Tiversa; and that Clark solicited business on Tiversa's behalf at the Masters Golf Tournament in April 2009.  Id.

Plaintiffs allege that Boback's false statements were intended to and did deceive the district court, which dismissed the case for lack of personal jurisdiction.  Id. ¶ 349.  LabMD appealed to the United States Court of Appeals for the Eleventh Circuit on August 31, 2012.  Id. ¶ 352. Plaintiffs allege that in Boback's appellate brief, Tiversa and its attorneys repeated the allegedly false statements regarding jurisdiction, and that these statements were intended to and did deceive the Eleventh Circuit, which affirmed the district court's findings.  Id. ¶ 354.

Plaintiffs further allege that Pepper Hamilton made false statements in briefs submitted to the district court and the Eleventh Circuit when it claimed that Tiversa did not hack LabMD's computers, located in Georgia.  Id. ¶ 356.  Instead, the attorneys argued that the information was obtained on a public P2P network.  Plaintiffs allege that Boback, Tiversa, Kline, Hansberry and Pepper Hamilton knew these statements were false.  Id. ¶ 359.

In addition to the alleged false statements to the district court, Plaintiffs allege that Tiversa's attorney made false statements in a November 2012 letter to LabMD.  Id. ¶ 369. Specifically, Plaintiffs allege that Hansberry and Pepper Hamilton, with the knowledge and consent of Boback and Kline, sent a letter to LabMD claiming that Tiversa was unaware that LabMD was the subject of an FTC investigation.  Id.  It also stated that Tiversa did not hack into LabMD's computers and that the files were publicly available.  Id.  Hansberry allegedly demanded that LabMD immediately cease publication of false statements against Tiversa found in Daugherty's book.  Id. ¶ 370.  The letter contained a threat to sue Plaintiffs for various torts if Daugherty published his book.  Id.  Thereafter, Tiversa filed defamation claims against LabMD in

state and federal court in Pennsylvania, but it voluntarily dismissed both lawsuits prior to discovery. Id. ¶¶ 224-225.

### 5.   The Dartmouth Defendants' Alleged Role

Plaintiffs allege that, in 2008, as part of a federally funded research study, Dartmouth and Defendant Johnson called upon Tiversa to search for, access, download, and transfer to them private and confidential files. Id. ¶ 163.  On January 30, 2008, Tiversa gave Dartmouth access to 1,600 files from across 10 different hospitals. Id. ¶ 163.  On April 29, 2008, Plaintiffs allege that the Dartmouth Defendants emailed a Tiversa employee and indicated that the files "turned up some interesting stuff," but that they wanted more files "to spice up the report [and] really boost the impact of the report." Id. ¶ 166.  In response to this request, Plaintiffs allege that Tiversa sent Dartmouth the 1718 File allegedly stolen from LabMD. Id. ¶ 167.

Before Boback and Tiversa sent the list to the FTC, in or about January 2009, the Dartmouth Defendants publicized an upcoming research paper entitled "Data Hemorrhages in the Health-Care Sector" (the "Dartmouth Paper"). Id. ¶ 197.  The Dartmouth Paper was presented at a conference on February 22, 2009, and it was posted on Dartmouth's website. Id. ¶ 199.  It received a "great deal of media attention," including print and online publication in *Wired* magazine in 2009. Id. ¶¶ 203-04.

Plaintiffs claim that the Dartmouth Paper made false, fraudulent, and defamatory statements about the 1718 File.  Plaintiffs further allege that, to avoid disclosing Tiversa's fraudulent scheme, the Dartmouth Defendants lied about Tiversa's methods. Id. ¶ 201.  The Dartmouth Paper claimed that the information was easily downloadable from P2P networks. However, Plaintiffs allege that the Dartmouth Defendants knew or should have known that Tiversa

had illegally hacked LabMD to steal the information.  Id. ¶ 206.  Although the Dartmouth Paper refers to the 1718 File, it does not identify LabMD.  ECF No. 1-12.

On February 3, 2009, Plaintiffs allege that Boback provided information about the Dartmouth Paper to FTC investigator Carl Settlemyer ("Settlemyer").  ECF No. 1 ¶ 209.  Settlemyer emailed Johnson, indicating that he had seen Johnson had a new article forthcoming on health information available on P2P networks, and requesting that Johnson forward a copy of the Dartmouth Paper when it was available.  Id.

### 6. Remaining Defendants

In their Complaint, Plaintiffs also allege wrongdoing by certain Tiversa employees or officers.  Plaintiffs allege that members of Tiversa's Advisory Board (Defendants Clark, Schmidt, and Ponemon) helped to implement Tiversa's allegedly fraudulent business model.  Plaintiffs assert that these Advisory Board members left meetings with "to do" lists, but do not identify the content of these lists or the activities allegedly performed.  Id. ¶ 114.  In addition, Schmidt allegedly introduced Tiversa and Boback to potential clients and media contacts.  Id. ¶ 115.

Plaintiffs further allege that Ponemon helped Tiversa publish a "crisis report" about cybersecurity issues and several other publications regarding Tiversa's business.  Id. ¶¶ 119-20.  With respect to Clark, the Complaint asserts that he helped to promote Tiversa and introduced Boback to various federal agencies and Congressmen.  Id. ¶¶ 121-22.  On one occasion, Plaintiffs allege that Clark testified in front of Congress about cybersecurity issues.  Id. ¶ 123.  According to the Complaint, this testimony establishes he knew of Tiversa's illegal scheme.  Id.

Plaintiffs allege that former Tiversa employee Chopra submitted a false affidavit on April 17, 2015 in the Enforcement Action.  This affidavit identifies Chopra's observations regarding the metadata contained in proposed exhibits identified as CX1007, CX1008, and CX1009.  Plaintiffs

do not identify what statements are purportedly false or the context in which the affidavit was submitted. Id. ¶¶ 409-411.

Plaintiffs further allege on information and belief that Adams, Becker, Chopra, the Dartmouth Trustees, Johnson, Hansberry, Hopkins, Kopchak, Pepper Hamilton, and Tagliaferri also knew of Tiversa's alleged scheme, enabled the alleged scheme and advised Tiversa to keep its alleged scheme secret. Id. ¶¶ 144-48.

### 7. LabMD's 2010 Inquiry Letters

In letters dated September 30, 2010 (the "Inquiry Letters"), LabMD notified Dartmouth College, Johnson, and Tiversa that it had become aware of the 1718 File coming into the possession of Johnson, Tiversa, and FTC, and that it was also aware that a redacted version of this file had been published in a *Wired Magazine* article in 2009. ECF No. 2-4; Id. ¶ 321. LabMD explained that it was investigating the "abuse and misappropriation of LabMD's property that may have involved any number of legal infractions, possibly including but not limited to, theft, conversion, extortion, trespass, privacy infringement, copyright infringement, computer crime, and misappropriation of trade secrets." ECF No. 2-4 at 2. LabMD included a series of questions to aid in its investigation, including an inquiry into whether Defendants "were involved in . . . a pattern of conduct, involving taking property like LabMD's property in connection with attempts to solicit the property owners as clients, threats to expose the property to authorities, and/or efforts to reap benefits from the property." Id. at 4.

### B.   PROCEDURAL HISTORY

#### 1.   Prior Lawsuits

This is one of a multitude of lawsuits filed by LabMD and Daugherty in numerous forums arising out of allegations that Tiversa stole the 1718 File from LabMD and engaged in a shakedown

scheme involving LabMD.[2]  Plaintiffs filed *Georgia I*, discussed above, in October 2011, and it was dismissed based on lack of personal jurisdiction on August 15, 2012.

Over three years later, and after the United States Court of Appeals for the Eleventh Circuit affirmed the dismissal of *Georgia I*, LabMD filed a second lawsuit in this Court on January 21, 2015 ("*Pennsylvania I*").  LabMD filed *Pennsylvania I* against Tiversa, Johnson, and Boback. LabMD v. Tiversa Holding Corp., No. 15-92 (W.D. Pa. Jan. 21, 2015).  LabMD asserted claims for conversion, defamation, tortious interference with business relations, fraud, negligent misrepresentation, civil conspiracy, and violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").  The Court dismissed LabMD's federal RICO claim as barred by the statute of limitations, and it dismissed all other claims with the exception of a portion of a defamation per se claim as to two statements.  ECF Nos. 70, 115, 166, 185.  *Pennsylvania I* is currently pending.

## 2.  Plaintiffs' Complaint

On July 8, 2016, Plaintiffs LabMD and Michael Daugherty ("Daugherty"), President and CEO of LabMD, filed the instant action in the United States District Court for the Northern District

---

[2] The Court discusses lawsuits that are relevant to the procedural history of this action above.  In addition to those actions, the Court is presently aware of additional cases that were filed in the United States District Court for the Southern District of New York (United States of America ex rel. Michael J. Daugherty v. Tiversa Holding Corp., et al., Case No. 1:14-cv-4548); the Supreme Court of the State of New York (LabMD, Inc. and Michael J. Daugherty v. Mary Beth Buchanan and Bryan Cave Leighton Paisner LLP, Index No. 160929/2018); the United States District Court for the Eastern District of Virginia (LabMD Inc. v. The Privacy Institute, et al., at Case No. 1:19-cv-852); the United States District Court for the Western District of Pennsylvania (LabMD, Inc. v. Tiversa Holding Corp., et al, Case No. 2:17-cv-1365); the United States District Court for the District of Columbia (LabMD, Inc. v. Federal Trade Commission, et al., Case No. 1:13-cv-1787 and Michael J. Daugherty and LabMD, Inc. v. Alain H. Sheer, et al., Case No. 1:15-cv-2034); the United States District Court for the Northern District of Georgia (LabMD, Inc. v. Federal Trade Commission, Case No. 1:14-cv-810).  The Court is also aware of numerous appeals that have been filed arising out of these cases and of two related lawsuits filed by Tiversa and Boback against LabMD and Daugherty in this Court (Case No. 2:13-cv-1296) and in the Court of Common Pleas for Allegheny County, Pennsylvania (Case No. GD-14-16497).

of Georgia.  ECF No. 1.  Plaintiffs assert claims against eighteen named Defendants, including Tiversa, Boback, various shareholders and members of Tiversa's Advisory Board (Clark, Ponemon, Schmidt,[3] Adams, Becker, Chopra, Hopkins, Kopchak, Tagliaferri), the Dartmouth Defendants, and certain law firms and attorneys that have represented Defendants in ongoing litigation arising out of LabMD's claims.  Plaintiffs also named ten Doe Defendants, whom Plaintiffs claim are unidentified individuals that actively participated and/or materially benefited from the alleged conduct set forth in Plaintiffs' Complaint.

Plaintiffs assert eleven causes of action and one count for attorneys' fees as follows:

| Count | Claim | Named Defendants |
|---|---|---|
| Count I | Federal RICO (18 U.S.C. § 1962(c)) | Hansberry, Kline, Tarquinio, Morgan Lewis, Pepper Hamilton and Does 1-10.[4] |
| Count II | Federal RICO Conspiracy (18 U.S.C. § 1962(d)) | Adams, Becker, Chopra, Clark, Hansberry, Hopkins, Kline, Kopchak, Ponemon, Schmidt, Tagliaferri, Tarquinio, Morgan Lewis, Pepper Hamilton, Dartmouth and Does 1-10. |
| Count III | Georgia RICO (O.C.G.A. § 16-14-4) | Boback, Chopra, Hansberry, Johnson, Kline, Tarquinio, Morgan Lewis, Pepper Hamilton, Tiversa, Dartmouth and Does 1-10. |
| Count IV | Georgia RICO Conspiracy (O.C.G.A. § 16-14-4(c)) | Adams, Becker, Boback, Chopra, Clark, Hansberry, Hopkins, Johnson, Kline, Kopchak, Ponemon, Schmidt, Tagliaferri, Tarquinio, Morgan Lewis, Pepper Hamilton, Tiversa, Dartmouth and Does 1-10. |
| Count V | Computer Fraud and Abuse Act (18 U.S.C. § 1030) | Boback, Johnson, Tiversa, Dartmouth and Does 1-10. |

---

[3] The Individual Defendants' Motion to Dismiss notes that Howard Schmidt is deceased and informs the Court that a suggestion of death pursuant to Federal Rule of Civil Procedure 25(a) will be filed.  ECF No. 265 at 2.  To date, no suggestion of death has been filed.

[4] Although Plaintiffs only name some of the Board Defendants with respect to Count I, in their Civil RICO Case Statement, they assert that all of the Board Defendants have violated both 18 U.S.C. § 1962(c) and (d).

| Count VI | Georgia Computer Systems Protection Act (O.C.G.A. § 16-9-93(g))[5] | Boback, Johnson, Tiversa, Dartmouth and Does 1-10. |
|---|---|---|
| Count VII | Common Law Fraud | Hansberry, Kline, Tarquinio, Morgan Lewis, Pepper Hamilton, Dartmouth and Does 1-10. |
| Count VIII | Common Law Negligence | Hansberry, Kline, Tarquinio, Morgan Lewis, Pepper Hamilton, Dartmouth and Does 1-10. |
| Count IX | Fraudulent Misrepresentation | Hansberry, Kline, Tarquinio, Morgan Lewis, Pepper Hamilton, Dartmouth and Does 1-10. |
| Count X | Negligent Misrepresentation | Hansberry, Kline, Tarquinio, Morgan Lewis, Pepper Hamilton, Dartmouth and Does 1-10. |
| Count XI | Common Law Conspiracy | Adams, Becker, Chopra, Clark, Hansberry, Hopkins, Kline, Kopchak, Ponemon, Schmidt, Tagliaferri, Tarquinio, Morgan Lewis, Pepper Hamilton, Dartmouth and Does 1-10. |
| Count XII | Attorneys' Fees and Expenses | Adams, Becker, Chopra, Clark, Hansberry, Hopkins, Kline, Kopchak, Ponemon, Schmidt, Tagliaferri, Tarquinio, Morgan Lewis, Pepper Hamilton, Dartmouth and Does 1-10. |

Plaintiffs subsequently dismissed Defendant Hansberry in February 2019.  ECF Nos. 243, 244.

### 3.  Defendants' October 2016 Motions to Dismiss or Transfer and the Order Transferring this Action to this Court.

In October 2016, Defendants filed Rule 12(b) Motions to Dismiss this action in the United States District Court for the Northern District of Georgia.  Specifically, Defendants filed Motions to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6).  ECF Nos. 64, 66, 87, 88, 89,

---

[5] Although Plaintiffs refer to this claim as "Georgia Computer Crimes" in their Complaint, Plaintiffs assert this civil claim under the Georgia Computer Systems Protections Act.

90, 91, 92, 93, 94, 95, 96, 98, 99, 100.   In addition, Defendants Tiversa, Dartmouth, Chopra, Kopchak, Becker, Adams, Tagliaferri, Hopkins, Clark, Schmidt, Boback and Poneman moved for dismissal based on lack of personal jurisdiction under Rule 12(b)(2).   ECF Nos. 64, 66, 87, 88, 89, 90, 91, 92, 93, 95, 96, 98.   Defendants Tiversa, Hansberry, and Pepper Hamilton also moved, in the alternative, to transfer this action to the United States District Court for the Western District of Pennsylvania.[6]

In an order dated March 22, 2017 (the "Transfer Order"), the Honorable Judge Leigh Martin May granted Defendants' Motion to Transfer to this Court.   ECF No. 153.   In so holding, Judge May explained that, under the first-filed rule, "[w]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule."   Id. at 21 (quoting Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005)).   Pursuant to this rule, "the court where the subsequently filed action has been filed should defer to the court where the first action was filed to allow that court to decide whether it should exercise jurisdiction over both cases in a consolidated action."   Id. at 22 (quoting Marietta Drapery & Window Coverings Co. v. River Ins. Co., 486 F. Supp. 2d 1366, 1370 (N.D. Ga. 2007)).

Applying the relevant factors, the Georgia District Court held that transfer was proper because *Pennsylvania I* was the first-filed case, and the parties and issues in this case and *Pennsylvania I* are sufficiently similar to warrant transfer.   Id. at 28-31.   In so holding, Judge May rejected Plaintiffs' argument that, in order for the case to be transferred, the parties and issues must

---

[6] The parties additionally filed miscellaneous discovery motions and Plaintiffs filed motions to supplement their responses to Defendants' Motion to Transfer.   ECF No. 153 at 21.

be identical.  Id. at 31.  Having transferred all of Plaintiffs' claims to this Court, Judge May

declined to rule on the pending Motions to Dismiss, holding:

> Defendants' Motions to Transfer are GRANTED.  Because the case is being
> transferred to the Western District of Pennsylvania, the Court will not address the
> remaining Motions.

Id. at 31-32.

The action was transferred to this Court on March 22, 2017.  ECF No. 154.

### 4.   Order Denying the October 2016 Motions to Dismiss

Because the United States District Court for the Northern District of Georgia did not rule

on the Motions to Dismiss filed in October 2016, these motions remained pending upon transfer

of the action to this Court.  Upon review, this Court determined that many of the legal bases for

the Motions to Dismiss appeared to be rendered moot by the Transfer Order.  See ECF No. 156.

Accordingly, on May 26, 2017, the Court denied all of the pending Motions to Dismiss without

prejudice and granted leave to Defendants to file second Motions to Dismiss narrowly tailored to

the matters remaining in this case.  Id.

### 5.   Plaintiffs' Appeal of the Transfer Order and Stay Pending Appeal

On March 22, 2017, Plaintiffs appealed from the Transfer Order to the United States Court

of Appeals for the Eleventh Circuit.  Daugherty v. Adams, Case No. 17-11300 (11th Cir. 2017).

At Plaintiffs' request, this action was stayed during the pendency of Plaintiffs' appeal.  ECF Nos.

159, 165.

 In their appellate brief, Plaintiffs argued, inter alia, that Judge May erred because the

claims in this action and Pennsylvania I were not sufficiently similar to justify transfer under

Eleventh Circuit precedent.  Brief of Appellants, Daugherty v. Adams, Case No. 17-11300 (11th

Cir. 2017) ("App. Br."), at 12-13.  Plaintiffs noted Judge May's conclusion that Plaintiffs had

failed to substantiate their fraud on the court claims in their appeal from the dismissal of *Georgia I*. Based on that finding, Plaintiffs argued, Judge May erred by finding the two claims were sufficiently similar to permit transfer. Id. at 36. As a result, Judge May either (1) implicitly dismissed Plaintiffs' ten causes of action based on fraudulent statements regarding personal jurisdiction; or (2) ignored their existence in order to find that the two actions were sufficiently similar to justify transfer. Id. at 36-37.

Plaintiffs further argued that they were prejudiced as a result of the Transfer Order, because transfer likely would result in this Court dismissing Plaintiffs' claims:

> Due to the Pennsylvania borrowing statute on statutes of limitations, the five-year statute of limitations on Georgia RICO claims was reduced to four years upon the transfer of the action below to the Western District of Pennsylvania. As a result, the court in the *Pennsylvania Action* is likely to dismiss many, if not all, of LabMD and Daugherty's causes of action based on the fraudulent statements regarding Tiversa's contacts with the state of Georgia. In other words, transfer will severely prejudice LabMD and Daugherty's substantive rights on Counts I, II, III, IV, VII, VIII, IX, X, XI and XII.

Id. at 32.

Plaintiffs further argued:

> Boback's false statements in *Georgia I* were made on December 1, 2011. The action below was filed on July 8, 2016, within the five-year statute of limitations for Georgia RICO claims but not within the four-year statute of limitations in Pennsylvania. In other words, the lower court transferred LabMD and Daugherty's substantive claims to a jurisdiction where they are doomed to fail. This abuse of discretion . . . will result in a substantial prejudicial effect to LabMD and Daugherty.

Id. at 40.

The United States Court of Appeals for the Eleventh Circuit dismissed Plaintiffs' appeal, finding that the Transfer Order was not a final order and was not appealable under the collateral order doctrine.

On July 14, 2017, Plaintiffs requested that this Court continue to stay this action pending the resolution of a separate appeal arising out of *Georgia I*.  ECF No. 169.  On August 1, 2017, the Court granted Plaintiffs' request to continue the stay pending the Eleventh Circuit's resolution of Plaintiffs' appeal in the *Georgia I*.  ECF No. 202.  On May 22, 2018, Defendants Pepper Hamilton and Hansberry, joined by Defendants Morgan Lewis and Kline, moved to lift the stay, notifying the Court that the Rule 60(d)(3) appeal in the *Georgia I* had concluded.  ECF Nos. 211, 216.

### 6.  Plaintiffs' Motion to Transfer

Thereafter, on June 8, 2018, Plaintiffs moved to transfer this action back to the Northern District of Georgia.  ECF No. 218.  Plaintiffs argued, *inter alia*, that Judge May had "implicitly dismissed all of LabMD and Daugherty's claims, without any motion to dismiss having been filed, including Plaintiffs' claims for Georgia RICO and Georgia Computer crimes," arguing that the case must be transferred to Georgia to avoid the need for the United States Court of Appeals for the Third Circuit to weigh in on whether Judge May erred in dismissing Plaintiffs' claims.  ECF No. 218 at 5.

While asserting that these claims had already been dismissed, however, Plaintiffs further argued that a "significant" statute of limitations issue placed their Georgia RICO claims at risk of dismissal by this Court under Pennsylvania law:

> Unless this case is transferred to Georgia, LabMD and Daugherty will never have their day in Court on their Georgia RICO claims.  Under Georgia law, the statute of limitations for Georgia RICO claims is five (5) years.  O.C.G.A. § 16-4-8.  In

> the Pennsylvania Action, however, the statute of limitations for LabMD and Daugherty's Georgia RICO claims will be less than five (5) years under the Pennsylvania borrowing statute . . . . It simply cannot be said that this Court would be the better arbiter of LabMD and Daugherty's claims where in this Court, but not in the other, LabMD and Daugherty's Georgia RICO claims would be time barred.

ECF No. 228 at 5; ECF No. 229 at 2-3.

On March 4, 2019, this Court denied Plaintiffs' Motion to Transfer, lifted the stay, and ordered Defendants to file second motions to dismiss or otherwise answer the Complaint by April 4, 2019. ECF Nos. 245, 246. The Court specifically instructed the parties that "a motion to dismiss must be narrowly tailored to address only the matters remaining in this case." ECF No. 245 at 2.

### 7. Pending Motions to Dismiss

All remaining Defendants submitted Motions to Dismiss and Briefs in Support. ECF Nos. 261, 262, 264, 265, 267, 268, 270, 271, 272, 273, 275 and 275. Plaintiffs filed Briefs in Opposition in response to all pending Motions to Dismiss. ECF Nos. 281, 282, 283, 284, 285 and 286. With the exception of Boback, moving Defendants submitted Reply Briefs in support of their motions. ECF Nos. 287, 288, 289, 290 and 291.

Upon review, the Court ordered Plaintiffs to submit a civil RICO case statement ("RICO Case Statement") in accordance with Local Civil Rule 7.1B, which Plaintiffs filed on August 5, 2019. ECF Nos. 292 and 293. The Motions to Dismiss are now ripe for consideration.

### C. STANDARD OF REVIEW

In assessing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in

the complaint.  See Cal. Pub. Employees' Retirement Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the Court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

Generally, in resolving a motion to dismiss courts may consider only the allegations set forth in the complaint, any exhibits submitted with the complaint and matters of public record. Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042 (1994).  The Court may also consider documents that are integral to or explicitly relied upon in the complaint.  Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). In addition, the Court may consider "an undisputedly authentic document that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit, 998 F.2d at 1196.  "In a civil RICO case, the RICO case statement is part of the pleadings." Aluminum Bahrain B.S.C. v. Dahdaleh, 17 F. Supp. 3d 461, 468 (W.D. Pa. 2014).

22

**D.      DISCUSSION**

1.  **Counts III through XII Were Not Previously Dismissed.**

In response to the Motions to Dismiss, with the exception of the Dartmouth Defendants'

Motion to Dismiss, Plaintiffs assert that the United States District Court for the Northern District

of Georgia previously dismissed all claims other than Counts I and II (the federal RICO claims).[7]

Plaintiffs claim that:

> In her March 22, 2017 transfer order in *Georgia II*, Judge May implicitly dismissed
> all of LabMD and Daugherty's claims that were distinct from LabMD's claims in
> *Pennsylvania I*.  The Court needed to remove the distinct claims and parties in order
> for the case could be [sic] transferred to the Western District of Pennsylvania in
> accordance with Eleventh Circuit law.

ECF No. 282 at 37 (citing <u>Manuel v. Convergys Corp.</u>, 430 F.3d 1132, 1135 (11th Cir. 2005)).

As a result, Plaintiffs claim, the Court has "already ruled against LabMD and Daugherty

on claims LabMD has not brought in *Pennsylvania I*," specifically, Counts III through XI.  <u>Id.</u> at

37-38.  Plaintiffs "object" to the Court ruling on the merits of their claims, and they admonish

Defendants for "ignor[ing] this Court's prior rulings and nevertheless mov[ing] to dismiss claims

that have already been dismissed."  <u>Id.</u> at 39.

Plaintiffs further assert that "without any waiver" of their objection to the Court's ruling

on the merits of these claims, they incorporate by reference: (1) Plaintiffs' briefs in opposition to

the previously mooted motions to dismiss filed in this action including, without limitation, ECF

Nos. 87, 88, 89, 90, 91, 92, 94, 95, 96, 98, 99 and 100; and (2) LabMD's briefing and submissions

on the statute of limitations in *Pennsylvania I* including, without limitation, ECF Nos. 63, 73, 83,

109, 118, 124, 144, 157, 169 and 179.  Thus, Plaintiffs ask the Court to consider arguments set

---

[7] It is unclear why Plaintiffs do not make the same argument with respect to the Dartmouth Defendants.

forth in at least twenty-two additional briefs not pending before the Court, in the event the Court considers the merits of Counts III through XII.  In addition to Plaintiffs' incorporation of arguments by reference, Plaintiffs only respond to some of the arguments raised by Defendants in Plaintiffs' Briefs in Opposition.

Defendants moved to dismiss Plaintiffs' claims in their entirety, but no Defendant has taken the position that the Transfer Order resulted in an "implicit dismissal" of these claims.  In response to Plaintiffs' argument that the Court should not rule on the merits of Plaintiffs' claims, several Defendants urged the Court to conclude that Plaintiffs have either "waived" their opposition to dismissal of these claims by failing to respond to Defendant' arguments, or that they have effectively abandoned these claims.

### a. The Transfer Order Did Not "Implicitly Dismiss" Counts III through XII.

Simply put, there is no basis for Plaintiffs' claim that Counts III through XII were "implicitly dismissed," or that the Court should not be permitted to rule on the merits of these claims.  The Transfer Order only transferred this action to this Court pursuant to the first-filed rule.  In so holding, the district court expressly held that it was not issuing any ruling on the pending motions to dismiss.  There is nothing in the Transfer Order stating, suggesting, or otherwise implying any intention to dismiss Plaintiffs' pending claims.[8]

Ignoring the clear language of the Transfer Order, Plaintiffs argue that Counts III through XII must have been "implicitly dismissed" because the district court needed to remove "the distinct

---

[8] Plaintiffs further assert that "[o]n May 26, 2017, this Court correctly recognized that Judge May's March 22, 2017 Order rendered many of the legal bases in the then-pending motions to dismiss moot. ECF No. 156.  All defendants have ignored this Court's previous rulings and nevertheless moved to dismiss claims that have already been dismissed on grounds that are now moot."  ECF No. 282 at 38.  To the extent Plaintiffs are suggesting that this Court's May 26, 2017 Order implies that Counts III through XII were dismissed, this misrepresents the text of the

claims and parties in order for the case" to be transferred pursuant to the Eleventh Circuit's application of the first-filed rule. This theory is not supported on its face, and it is also not supported by the law. If, in fact, the district court had dismissed all of the "distinct claims and parties," as Plaintiffs suggest, there would have been nothing left of Plaintiffs' Complaint to transfer. With respect to any parties also sued in *Pennsylvania I*, Plaintiffs did not assert any claims brought in *Pennsylvania I* against those parties in this action. <u>See</u> ECF No. 1 at 148, 167, 180, 182, 183, 185, 187, 189 n. 8-15 (indicating that, due to the pendency of *Pennsylvania I*, Defendants Boback, Tiversa and Johnson are not sued in Counts I, II, VII, VIII, IX, X, XI and XII). Despite this fact, and without explanation, Plaintiffs selectively argue that only certain claims have been dismissed.

To the extent that Plaintiffs cite to <u>Manuel v. Convergys Corp.</u>, 430 F.3d 1132, 1135 (11th Cir. 2005) as alleged support for the premise that the district court needed to dismiss all distinct claims and parties, <u>Manuel</u> does not support this proposition. In <u>Manuel</u>, the Court of Appeals for the Eleventh Circuit explained, "[w]here two actions involving *overlapping issues and parties* are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule." <u>Id.</u> (emphasis added). This case does not suggest that the claims and parties need to be identical in order for the first-filed rule to apply, let alone that the transfer of any non-identical claims or parties results in an "implicit dismissal" of those distinct claims and parties.

---

order and is incorrect. Defendants had, for example, filed numerous motions to dismiss based on lack of personal jurisdiction in Georgia that were rendered moot due to the transfer.

Indeed, the Georgia district court specifically rejected Plaintiffs' legal argument regarding the application of the first-filed rule under Eleventh Circuit precedent, making it clear that the Georgia district court did not "implicitly dismiss" Plaintiffs' claims on these grounds:

> . . . Plaintiffs merely assert that they have asserted new claims and made new allegations in this case that are not present in the Pennsylvania Action. Additionally, Plaintiffs point out that the attorneys are different.
>
> However, Plaintiffs do not address the fact that, while there are some differences, the overlap is substantial. Instead, Plaintiffs appear to argue that the cases have to be identical for the First Filed Rule to apply. However, because the overlap is substantial, the Court finds that the factor is met and the First Filed Rule applies.

ECF No. 153 at 31.

Accordingly, there is no basis for Plaintiffs' claim that Counts III through XII were previously dismissed. Therefore, the Court should reject Plaintiffs' "objection" to this Court's authority to review the merits of their claims.

### b. Plaintiffs Waived Arguments Not Asserted in Their Briefs in Opposition.

Having concluded that Counts III through XII are still pending, the Court next considers Defendants' arguments that Plaintiffs have waived their arguments in opposition to dismissal or abandoned these claims. After arguing that their claims have already been dismissed, Plaintiffs selectively oppose some of Defendants' substantive arguments for dismissal and further refer the Court to prior filings in this and other cases. Given Plaintiffs' opposition to dismissing Counts III through XII, there is not a clear intent to abandon these claims.

With respect to waiver, waiver occurs if plaintiff has an opportunity to make an argument in response to defendant's motion to dismiss and fails to do so. See Dreibelbis v. Scholton, 274 F. App'x 183, 185 (3d Cir. 2008) (finding that argument was waived where plaintiff "had ample

26

opportunity to make this argument in response to defendants' motion to dismiss and failed to do so"); see also Griglak v. CTX Mortg. Co., No. 09-5247, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count."); Hollister v. U.S. Postal Serv., 142 F. App'x 576, 577 (3d Cir. 2005) (noting that a party's failure to oppose an argument raised in a motion to dismiss constitutes waiver of the same).  Here, because Plaintiffs had an opportunity to respond to the substance of the arguments briefed by Defendants, to the extent Plaintiffs have failed to do so, the Court should deem those arguments waived.  Where Plaintiffs have responded to the substance of an argument, however, the Court addresses those arguments below.

To the extent Plaintiffs rely on arguments raised in prior briefing filed while this action was pending in Georgia and briefs filed in *Pennsylvania I*, the Court should also deem any such arguments waived.  Under this Court's rules and procedures, litigants are limited to twenty-five pages in responding to dispositive motions.[9]  Plaintiffs' effort to "incorporate by reference" literally hundreds of pages of additional briefing not before the Court improperly circumvents these page limits, unfairly prejudices the opposing parties, and taxes the Court's resources.  See Masimo Corp. v Philips Elec. N.A. Corp., 62 F. Supp. 3d 368, 376 (D. Del. 2014) (holding it is improper to incorporate prior briefing by reference to circumvent briefing page limits).[10] "Incorporating" Plaintiffs' prior Briefs in Opposition is also a clear violation of the Court's May 26, 2017 and March 4, 2019 Orders, in which the Court expressly instructed the parties to file new

---

[9] Practices and Procedures of Magistrate Judge Maureen P. Kelly, Section II(B)(1), available at https://www.pawd.uscourts.gov/sites/pawd/files/kelly_pp.pdf.

[10] Plaintiffs are familiar with this Court's procedures in this respect, having sought leave to file excess pages in response to one of the pending briefs.  ECF No. 259.

dispositive motions that are narrowly tailored to the remaining issues before the Court.  ECF Nos. 156, 245.

The Court is also troubled by Plaintiffs' efforts to rely on briefing filed in this action in Georgia, considering Plaintiffs' repeated arguments that their claims were "doomed to fail" upon transfer pursuant to Pennsylvania's borrowing statute.  See App. Br. at 40.  In particular, Plaintiffs have stated that a shorter statute of limitations period should apply under Pennsylvania law. Plaintiffs do not brief (or address) this issue in response to the pending Motions to Dismiss, except to say that it would bolster Plaintiffs' appeal of the Transfer Order if the Court applies a four-year statute of limitations to its Georgia RICO claims.  While the Court ultimately does not agree that this issue is dispositive here for the reasons discussed below, it appears Plaintiffs may improperly be attempting to rely on arguments they have claimed are incomplete or inaccurate following transfer.  For these reasons, it is therefore recommended that any arguments not briefed by Plaintiffs in response to the pending Motions to Dismiss be deemed waived.

## 2.  Plaintiffs' RICO Claims (Counts I, II, III, and IV)

In the Complaint, Plaintiffs assert claims under the federal RICO statute (Counts I and II) and the Georgia RICO statute (Counts III and IV).  For the following reasons, the Court recommends that these claims be dismissed.

### a.  Plaintiff Daugherty's RICO claims

Several Defendants argue that Plaintiff Daugherty's RICO claims should be dismissed because he lacks standing to assert them.  Under both the federal and Georgia RICO statutes, "[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by conduct constituting the violation."  Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985); see also Clark v. Conahan, 737 F. Supp. 2d 239, 255 (M.D. Pa.

28

2010); <u>Williams v. Mohawk Indus., Inc.</u>, 465 F.3d 1277 (11th Cir. 2006) ("Georgia courts 'look to federal authority' in determining RICO standing") (quoting <u>Maddox v. So. Eng'g Co.</u>, 500 S.E.2d 591, 594 (Ga. Ct. App. 1998)), *abrogated on other grounds*.  "[A]bsent a direct individual injury, a corporate shareholder or officer lacks standing to sue for an injury to the corporation" and "the president and principal shareholder of a corporation cannot claim damages to the corporation as his own."  <u>Meade v. Kiddie Acad. Domestic Franchising</u>, No. 11-cv-900, 2011 WL 5104501, at *2 (D. N.J. Oct. 25, 2011); <u>see also</u> <u>Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Fla., Inc.</u>, 140 F.3d 898, 906 (11th Cir. 1998) ("RICO standing will not arise solely because one is a shareholder or limited partner in a company that was the target of the alleged RICO violation.").

Here, Defendants argue that Daugherty's status as "chief executive officer and sole shareholder" of LabMD is insufficient to confer standing in the absence of any allegations that he was harmed separate and apart from his officer status.  ECF No. 271 at 26-27.  In response, Plaintiffs argue that Daugherty personally guaranteed LabMD's lease payments and, at the time the Complaint was filed, faced up to $500,000 in personal liability.  ECF No. 286 at 18-19.  In addition, Plaintiffs contend, Daugherty has "incurred personal costs for expenses associated with the fallout of Defendants' wrongs."  <u>Id.</u>

As Defendants correctly point out, Plaintiffs have not alleged these purported damages with respect to Daugherty in their Complaint.  Moreover, Plaintiffs' RICO Case Statement does not identify Daugherty as an alleged victim of Defendants' conduct, and it does not identify any independent injuries to Daugherty.[11]  Because Plaintiffs "may not assert new claims or rely on new

---

[11] The Court notes that Plaintiffs' RICO Case Statement was submitted after the briefing on motions to dismiss. Thus, Plaintiffs had knowledge of Defendants' arguments regarding Daugherty's lack of standing to assert his RICO claims in preparing their responses.

facts in response to a motion to dismiss," Plaintiff Daugherty's RICO claims (Counts I, II, III, and IV) should be dismissed for lack of standing.  <u>Bos v. Prime Care Med.</u>, Inc., No. CV 17-5124, 2018 WL 3032853, at *5 n. 6 (E.D. Pa. June 18, 2018).

### b.  LabMD's Federal RICO Claims

Plaintiffs allege violations of the federal RICO statute, 18 U.S.C. § 1962(c) and/or (d), against all Defendants except Boback, Tiversa and Johnson.[12]  These provisions set forth the following activities prohibited by RICO:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c)-(d).

### i.  Statute of Limitations

All Defendants move to dismiss the federal RICO claims asserted in Counts I and II based on the statute of limitations.  The statute of limitations for a federal RICO claim is four years.  <u>Rotella v. Wood</u>, 528 U.S. 549, 552 (2000).  The statute begins to run when the plaintiff knew or should have known of his injury.  <u>Id.</u> at 553, 554.  Although the statute of limitations is an affirmative defense, the Court may grant a Rule 12(b)(6) motion based on the statute of limitations

---

[12] Plaintiffs indicate in their Complaint that, because LabMD asserted federal RICO claims against these Defendants in *Pennsylvania I*, they have not asserted such claims in this lawsuit.  In *Pennsylvania I*, this Court previously dismissed the federal RICO claims against Tiversa, Boback and Johnson because the claims were barred by the applicable statute of limitations.

if the claim is clearly time barred based on the face of the Complaint and matters of public record.

In re Trustees of Conneaut Lake Park, Inc., 563 B.R. 784, 790 (W.D. Pa. 2017).

In Plaintiffs' RICO Case Statement, in response to the directive to "List the alleged victims [of the RICO violations] and how each victim has allegedly been injured," LabMD instructed the Court to "[s]ee RICO Case Statement in *Pennnsylvania I Action*." ECF No. 293 at 16. In *Pennsylvania I*, LabMD answered this question as follows:

> . . . Defendants' scheme has been financially devastating to LabMD, including by causing the FTC's investigation and enforcement action against it. As a direct consequence of the FTC's proceedings, including the attendant publicity and administrative burdens that were imposed on LabMD to comply with the FTC's demands for access to current and former employees and the production of thousands of documents, LabMD's insurers cancelled all of the insurance coverage for LabMD and its directors and officers, and LabMD lost virtually all of its patients, referral sources, and workforce, which had included around 40 full-time employees. Consequently, LabMD was effectively forced out of business by January 2014, and it now operates as an insolvent entity that simply provides records to former patients. In addition, Defendants have published false and fraudulent statements about LabMD to third parties, including statements that refer to LabMD's trade and profession that were calculated to injure it therein and were disparaging word productive of special damage which flows naturally therefrom.

 LabMD v. Tiversa, Case No. 15-92 (W.D. Pa. 2011), ECF No. 19 at 6.

In their Motions to Dismiss, Defendants argue that Plaintiffs' federal RICO claims are untimely because Plaintiffs knew of their injuries by 2010, at the latest, but this action was not filed until six years later, in 2016. Defendants point to, for example, Plaintiffs' claim that it received notice of the FTC investigation by January 19, 2010, Plaintiffs' 2010 Inquiry Letters, and the fact that Plaintiffs filed a lawsuit against Tiversa and the Dartmouth Defendants in 2011 claiming injury arising out of the theft of the 1718 File, all of which occurred more than four years prior to this lawsuit.

31

In their Briefs in Opposition, Plaintiffs acknowledge that they were aware of the alleged theft of the 1718 File and of the FTC investigation by 2008 and 2010, respectively.  ECF No. 286 at 3.  Plaintiffs argue, however, that Plaintiffs were not fully aware of Tiversa's frauds or lies to the FTC until 2014, when former Tiversa employee Richard Wallace testified to the FTC regarding Tiversa's fraudulent practices.  Accordingly, they were not on "inquiry notice" of their claims by 2010.

In addition, Plaintiffs argue that, under the "separate accrual" rule, the frauds disclosed by Wallace in 2014 and fraudulent statements made in connection with *Georgia I*, which Plaintiffs refer to as the "Second" and "Third Occurrences," should trigger new statutes of limitations.  Plaintiffs further argue that the doctrine of equitable tolling should apply, because Defendants allegedly engaged in fraudulent concealment and Plaintiffs were diligent in pursuing their remedies, including through "non-stop litigation" against certain Defendants beginning in 2011.

Upon review, the Court finds that Plaintiffs' federal RICO claims should be dismissed pursuant to the statute of limitations.  According to Plaintiffs' allegations in the Complaint, Defendants' actions caused the FTC to investigate LabMD at least as early as January 2010.  ECF No. 1 ¶¶ 216, 218.  Consistent with this Court's previous holding in *Pennsylvania I*, "at that point, LabMD knew of the injury it claims to have suffered and who caused that injury, even if did not then know the precise methods used or motivation behind the injury."  LabMD v. Tiversa, Case No. 15-92 (W.D. Pa. 2011), ECF No. 70, at 16.  The instant Complaint was filed in 2016, well beyond four years after the identified event, and LabMD's federal RICO claims are therefore barred by the statute of limitations.[13]

---

[13] While Wallace's testimony may have disclosed previously unknown details, Plaintiffs' repeated argument that they did not know and had "no reason to believe" that Defendants were "lying to the FTC and others about the 1718

Plaintiffs' attempt to rely upon the separate accrual rule and the doctrine of equitable estoppel does not alter this result. Under the separate accrual rule, "if a new RICO predicate act gives rise to a new and independent injury, the statute of limitations clock will start over for damages caused by the new act." Lehman v. Lucom, 727 F.3d 1326, 1331 (11th Cir. 2013) (citing Klehr v. A.O. Smith Corp., 521 U.S. 179, 190 (1997)). "At the same time," however, "plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." Id. (quoting Klehr, 521 U.S. at 190). If an injury is merely a "continuation of [an] initial injury, it is not *new and independent*." Id. (quoting Pilkington v. United Airlines, 112 F.3d 1532, 1537-38 (11th Cir. 1997)).

Here, Plaintiffs' reliance on the "Second" and "Third Occurrences" is an unavailing attempt at bootstrapping because these "occurrences" did not give rise to new and independent injuries. With respect to the Second Occurrence, Plaintiffs do not assert that Wallace's "whistleblower" testimony gave rise to any injury to LabMD's business or property. To the contrary, Plaintiffs allege that Wallace's testimony provided additional information in support of their claims. As to the underlying frauds Wallace uncovered, these frauds did not cause a "new and independent injury," but instead relate to the same underlying injury involving Tiversa's purported theft of the 1718 File and reporting LabMD to the FTC.

---

File" prior to April 2014 misrepresents the record. ECF No. 283 at 5. Plaintiffs assert in their Complaint that they had reason to know Tiversa had lied by August 2013. ECF No. 1 ¶ 327. In addition to evidence discussed above, for example, Plaintiffs attach a Congressional Report indicating that, not only did Plaintiffs previously suspect Tiversa of lying prior to 2014, it reported such concerns to Congress: "[i]n August 2013, Mike Daugherty, LabMD's CEO, expressed concern to the [U.S. House of Representatives] Committee [on Oversight and Government Reform] about both the ***relationship between the FTC and Tiversa, Inc., and the veracity of the information provided by Tiversa***. ECF No. 1-1 at 6 (emphasis added). Prior to this, in 2012, LabMD moved to quash the FTC's civil investigative demand, arguing that the investigation appeared to be premised on the download of the 1718 File, and this disclosure occurred because LabMD was the victim of an "illegal intrusion" conducted by Tiversa and Dartmouth. See Letter from Commissioner Brill Denying Motion to Limit or Quash Civil Investigative Demand, April 20, 2012, cited at ECF No. 1-3 at 6.

The Third Occurrence refers to allegedly fraudulent statements made by Boback, Tiversa, and Pepper Hamilton in connection with court filings in *Georgia I*.  In their Complaint, Plaintiffs allege that, because the district court and Eleventh Circuit relied upon Defendants' fraudulent statements regarding personal jurisdiction, *Georgia I* was dismissed.  ECF No. 1 ¶ 363.  Plaintiffs claim that, but for this dismissal, they would not have needed to file a new lawsuit in Pennsylvania, and therefore "would have learned of all Defendants' wrongdoing through discovery in the Georgia Action."  Id. ¶¶ 364-365.

As Pepper Hamilton correctly points out, because *Georgia I* was dismissed without prejudice, Plaintiffs did not suffer the loss of any cause of action or right to discovery as a result of the dismissal, and therefore the dismissal did not cause injury to LabMD's business or property.[14]  See Okada v. Bank of Am., N.A., No. 15-cv-00981, 2015 WL 5556937, at *6 (C.D. Cal. Sept. 16, 2015) (finding that "no injury" could be attributed to plaintiff's voluntary dismissal of a pending suit against defendant based on defendant's alleged misrepresentation because plaintiff could have refiled suit); see also Flourine On Call, Ltd. v. Fluorogas Ltd., 380 F.3d 849, 859 (5th Cir. 2004) ("[Plaintiff] has no injury that can be attributed to the alleged fraudulent representations . . . . [I]t dismissed its first lawsuit without prejudice.").  Plaintiffs do not present any legal authority for the proposition that dismissal of a lawsuit without prejudice is a cognizable injury to business or property under the RICO statute.

Even if Plaintiffs arguably were injured by this dismissal, however, Plaintiffs do not plead facts to establish that the alleged fraudulent statements caused that injury.  Here, Plaintiffs suggest

---

[14] Moreover, as Plaintiffs argue, extensive discovery regarding allegations at issue to Plaintiffs' claims was conducted in the FTC proceedings, including approximately 40 depositions, which included depositions of Wallace and Defendants Boback and Johnson.  ECF No.  283 at 3.

that if Defendants had properly disclosed certain efforts to solicit business in Georgia, the district

court would not have dismissed LabMD's Complaint based on lack of personal jurisdiction.

In its underlying decision, the district court held:

> A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: (1) the exercise of jurisdiction must be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

> The Georgia Long-Arm Statute provides that a Georgia court may exercise personal jurisdiction over a nonresident defendant if it (1) transacts any business within this state; (2) commits a tortious act or omission within this state; or (3) commits a tortious injury in this state cause by an act or omission outside this state if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state. The long-arm statute thus requires that an out-of-state defendant do certain acts within Georgia before it can be subjected to personal jurisdiction.

ECF No. 268-6 at 5-6 (internal citations omitted).[15]

In *Georgia I*, LabMD argued that Tiversa was subject to personal jurisdiction in Georgia

under subsections (2) and (3) of the long-arm statute. Id. The district court concluded that Tiversa

"did not commit a tortious act within Georgia," and therefore subsection (2) did not apply. Id. at

7. Moreover, because Tiversa had only engaged in limited efforts to solicit business in Georgia

(one telephone contact and eight email contacts), it could not be said to have "regularly solicited

business" such that subsection (3) would apply. Id. at 9. Accordingly, the Georgia district court

dismissed the action based on lack of personal jurisdiction over Tiversa.[16]

---

[15] Because the ECF page numbers are obscured at the top of the page in this filing, the Court's page citations refer to the page numbers of the original document, located in the center bottom of the page.

[16] The Court may consider the district court's order dismissing *Georgia I* based on lack of personal jurisdiction because it is a matter of public record and Plaintiff expressly relies on this decision in his Complaint. See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014); ECF No. 1 ¶ 349.

Here, Plaintiffs allege that Defendants' failure to disclose Tiversa's efforts to solicit business from five Georgia companies, in addition to its efforts to solicit business in Georgia on two occasions in 2009 and 2010, would have altered the outcome on personal jurisdiction. As the district court held, however, "regularly" soliciting business refers to a "pattern of behavior" and requires conduct that is "recurring, attending, or functioning at fixed or uniform intervals." Id. at 9. Even considering the previously undisclosed allegations, there remains no evidence that Tiversa *regularly* solicited business in Georgia, such that Plaintiffs could satisfy the Georgia long-arm statute.[17] Thus, even if Plaintiffs could prove Defendants made fraudulent statements, they cannot establish that these undisclosed statements would have given rise to personal jurisdiction. Plaintiffs do not attempt to refute Pepper Hamilton's argument on this point. Accordingly, the allegations do not support any finding of a new and independent injury to trigger the separate accrual rule.

Finally, in order to apply equitable tolling, "a plaintiff must show that it exercised reasonable diligence in investigating and bringing its claims." U.S. ex. rel. Liberty Mech. Services, Inc. v. N.A. Specialty Ins. Co., 2 F. Supp. 3d 610, 619 (E.D. Pa. 2014) (citing New Castle Cty v. Halliburton NUS Corp., 111 F.3d 1116, 1126 (3d Cir. 1997)) (internal quotations omitted); see also Morton's Mkt., Inc. v. Gustafson's Dairy, Inc., 198 F.3d 823, 832 (11th Cir. 1999) (noting

---

[17] Plaintiffs are also required to establish that the exercise of jurisdiction comports with the Due Process Clause of the United States Constitution. The United States Supreme Court has held that there are "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." Bristol-Myers v. Squibb Co. v. Superior Court of Cal., San Francisco Cty., 137 S. Ct. 1773, 1780 (2017). In order to establish "specific" jurisdiction, the suit "must arise out of or relate to the defendant's contacts with the forum," whereas "general" jurisdiction requires that the Defendant must fairly be regarded as "home" in the forum state. Id. The undisclosed efforts to solicit business in *Georgia I* do not give rise to either specific or general jurisdiction.

that plaintiffs must show that "the defendants concealed the conduct complained of, and that [plaintiffs] failed, despite the exercise of due diligence on their part, to discover facts that form the basis of [their] claim") (quoting In re Beef Indus. Litig., 600 F.2d 1148, 1169 (5th Cir. 1979)).  By Plaintiffs' own argument, they had knowledge of facts underlying their RICO claims no later than April 2014, after Wallace testified.  Plaintiffs did not file this lawsuit until July 2016, over two years later.  Accordingly, equitable tolling does not apply, and Plaintiffs' federal RICO claims (Counts I and II) should be dismissed pursuant to the statute of limitations.

### ii.    Substantive Deficiency: Count I

Defendants also argue that Plaintiffs' federal RICO claims should also be dismissed because they fail on the merits.  The federal RICO statute provides for civil damages for "any person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c); Miller v. Burt, 765 F. App'x 834, 838 (3d Cir. 2019).  In order to state a claim under 18 U.S.C. § 1962(c), Plaintiffs must allege (1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity.  Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985).

In this action, Plaintiffs claim Defendants operated an association-in-fact enterprise, which is a "union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  In order to establish such an "enterprise," it "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose."  Boyle v. U.S., 556 U.S. 938, 946 (2009).  Additionally, a plaintiff must establish that defendants were associated with and participated in the "operation or management" of the enterprise.  This means that defendant "must, in some capacity, direct the affairs of the enterprise."  Brown v. Access Midstream Partners, L.P.,

141 F. Supp. 3d 323, 338 (M.D. Pa. 2015) (citing <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 184 (1993)).  Thus, a defendant is not liable "simply because he provides services that benefit the enterprise."  <u>Id.</u>

"Racketeering activity" is defined in 18 U.S.C. § 1961 to include acts indictable under certain provisions of the federal crimes code.  To prove a "pattern of racketeering activity," a plaintiff must allege "at least" two predicate acts that are "related" and "amount to or pose a threat of continued criminal activity."  <u>Freedom Med., Inc. v. Gillespie,</u> 634 F. Supp. 2d 490, 509 (E.D. Pa. 2007).

In addition to demonstrating a violation of the statute, Plaintiffs must prove that they were injured "by reason of" this statutory violation.  18 U.S.C. § 1964(c).  The United States Supreme Court has interpreted RICO's "by reason of" language to require that defendant's RICO violation was the proximate cause of the plaintiff's injury.  <u>Anza v. Ideal Steel Supply Corp.</u>, 547 U.S. 451, 457 (2006).  To establish proximate cause, the plaintiff must allege "some direct relation between the injury asserted and the injurious conduct alleged."  <u>Holmes v. Sec. Inv'r Prot. Corp.</u>, 503 U.S. 258, 268 (1992).

In their Complaint, Plaintiffs allege that Defendants Kline, Tarquinio, Morgan Lewis and Pepper Hamilton[18] were employed by or associated with an "enterprise."  ECF No. 1 ¶ 430.  The purported "common purpose" of this enterprise was to "commercially benefit by making misrepresentations about data privacy and security breaches to unsuspecting consumers, the media,

---

[18] Plaintiffs also originally asserted this claim against Defendant Hansberry, but he has since been dismissed. Plaintiffs also attribute predicate acts to Tiversa and Boback in their Complaint, and they allege in their Briefs in Opposition that Tiversa and Boback were members of the enterprise, but Plaintiffs have not asserted federal RICO claims against Tiversa and Boback in this action and do not identify these individuals as members of the alleged enterprise in their Complaint as to the federal RICO claims.  ECF No. 1 ¶ 430.

and the public, and to otherwise engage in tortious activities that advance their purpose." Id.

Plaintiffs' RICO Case Statement describes the alleged pattern of racketeering[19] as follows:

> Defendants identify victims, solicit them through mail and/or wire, and, if they agree to the solicitations, the victims transfer money directly to Defendant Tiversa. If the victim refuses the solicitations, as did LabMD, Defendants punish the victim through a campaign of racketeering actions, including being the fodder for Defendant Johnson's reports. In addition to LabMD, other businesses were victimized by Defendants, including but not limited to Open Door.

ECF No. 293 at 29; LabMD v. Tiversa, Case No. 15-92 (W.D. Pa. 2015), ECF No. 19 at 18.[20]

### (1) Pepper Hamilton

Plaintiffs claim that Pepper Hamilton violated the federal RICO statute for conduct arising out of Pepper Hamilton's legal representation of Defendant Tiversa in *Georgia I*. In particular, Plaintiffs allege that Pepper Hamilton and its former law partner, John Hansberry, knew that statements regarding personal jurisdiction in the Boback Declaration and statements regarding Tiversa's defense in a November 12, 2012 letter from Hansberry to LabMD were false. As a result, Pepper Hamilton allegedly committed the predicate acts of mail fraud, wire fraud, and obstruction of justice by the filing of the Boback Declaration.[21]

---

[19] As predicate acts, Plaintiffs assert violations of 18 U.S.C. § 1028 (identity fraud); 18 U.S.C. § 1029 (access device fraud); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1344 (bank fraud); 18 U.S.C. § 1462 (obscene matters); 18 U.S.C. § 1503 (obstruction of justice); 18 U.S.C. § 1512 (witness tampering); 18 U.S.C. § 1513 (witness retaliation); 18 U.S.C. § 1957 (money laundering); 18 U.S.C. § 1030 (computer fraud and abuse); 18 U.S.C. § 2252A (child pornography); 18 U.S.C. § 2319 (criminal infringement of a copyright); 18 U.S.C. § 2314 (National Stolen Property Act).

[20] In response to the inquiry to describe "how the predicate acts 'form a pattern of racketeering activity,'" Plaintiffs direct the Court to refer to their response to this inquiry in *Pennsylvania I*.

[21] Plaintiffs also assert that Pepper Hamilton "attempted and/or conspired to commit" violations of 18 U.S.C. § 1030(b) (computer fraud and abuse), 18 U.S.C. § 1029(b)(1) and (2) (access device fraud), and 18 U.S.C. § 1028(f) (identity fraud). ECF No. 1 ¶¶ 436, 448, 475.

In its Motion to Dismiss, Pepper Hamilton argues that, outside of Hansberry, who has since been dismissed from this action, no independent conduct is attributed to Pepper Hamilton. ECF No. 268 at 2. Pepper Hamilton further argues that Plaintiffs fail to plead (1) that Pepper Hamilton caused Plaintiffs' injuries because, among other things, dismissal of *Georgia I* was proper based on lack of personal jurisdiction notwithstanding the allegedly fraudulent statements; (2) the existence of a plausible enterprise, as there are no allegations Pepper Hamilton shared in the "common purpose" alleged, that it had any relationship with the other members of the enterprise, or that it participated in the operation or management of the enterprise; or (3) a "pattern" of racketeering activity arising out of the two alleged predicate acts, which do not satisfy RICO's continuity requirement.

Plaintiffs counter that, in addition to Hansberry, the allegations against Pepper Hamilton involve Defendant Kline. ECF No. 285 at 3. Kline was general counsel for Tiversa and moved from Morgan Lewis to Pepper Hamilton in 2011. Id. Plaintiffs allege that Kline "represented" Tiversa in *Georgia I*, although he was not counsel of record in that case. Id. Although Plaintiffs argue that *Georgia I* would not have been dismissed but for the fraudulent statements on jurisdiction, they do not respond to the substance of Pepper Hamilton's argument on jurisdiction. In addition, Plaintiffs argue that Pepper Hamilton was a member of the enterprise, which includes everyone who acted in furtherance of the "Tiversa Business Model." Id. at 22. Plaintiffs also argue that Pepper Hamilton's actions contributed to this scheme, because the fraudulent statements concealed their client's frauds. Id.

Based on our review, the Court recommends that dismissal is also proper on the merits. A plaintiff asserting a RICO claim must allege that the racketeering activity of the defendant proximately caused his injury, and this requires a direct relation between the injury and the

40

purported RICO violations.  Johnson v. Hoffa, 196 F. App'x 88, 90 (3d Cir. 2006).  Even if Plaintiffs could prove that Pepper Hamilton fraudulently omitted certain Georgia contacts from the Boback Declaration and related filings, for the reasons discussed above, this did not result in any injury.  Dismissal of *Georgia I* on the basis of personal jurisdiction was proper, notwithstanding these additional contacts, and Plaintiffs had the opportunity to file the same claims in another jurisdiction.  With respect to the 2012 letter from Hansberry, Plaintiffs do not allege that they (or anyone else) relied on the representations in this letter, and do not identify any purported injury as a result of any fraudulent statements contained therein.[22]  Accordingly, Plaintiffs cannot establish causation with respect to Pepper Hamilton, or as to Defendant Kline, to the extent Plaintiffs allege he participated in Pepper Hamilton's legal representation in *Georgia I.*

In addition, Plaintiffs do not plead a plausible enterprise involving Pepper Hamilton. Plaintiffs do not identify any relationship between Pepper Hamilton and other members of the purported enterprise, with the exception of Pepper Hamilton attorneys Hansberry and Kline, let alone any ongoing organization among the members.  See Boyle, 556 U.S. at 946 (noting that RICO enterprise requires relationship among members of the enterprise).  In addition, there are no allegations that Pepper Hamilton engaged in any conduct to forward the "common purpose" of this alleged enterprise.  Plaintiffs do not assert that Pepper Hamilton commercially benefited from "making misrepresentations regarding data privacy and security breaches," or even that Pepper

---

[22] Additionally, courts have held that sending letters stating a client's legal position does not constitute mail fraud. See, e.g., Paul S. Mullin & Assoc., Inc. v. Bassett, 632 F. Supp. 532, 540 (D. Del. 1986) ("The Court finds absurd plaintiffs' apparent suggestion that a lawyer's act in posting a letter which states a client's legal position in a dispute can constitute mail fraud.  If such were the situation, every dispute in which the parties' counsel exchanged letters could give rise to RICO litigation.  Such activity simply is not fraudulent.").

Hamilton aided others in doing so.  By the time of Pepper Hamilton's alleged conduct, Tiversa's purported extortion scheme had already been completed.

Plaintiffs' "enterprise" allegation as to Pepper Hamilton also fails because each defendant must have "participated in the operation or management of the enterprise itself."  In re. Ins. Brokerage Antitrust Litig., 618 F.3d 300, 371 (3d Cir. 2010).  To the extent lawyers or law firms simply act within the scope of their representation of a client, they are generally not considered to be part of the "operation or management" of a RICO enterprise.  Kelly v. Palmer, Reifler, & Assoc., P.A., 681 F. Supp. 2d 1356, 1380 (S.D. Fla. 2010) ("Courts following [the Supreme Court's decision in] *Reves* have generally held that the provision of traditional legal services does not constitute the 'operation or management' of an enterprise for purposes of RICO liability"); see also Azrielli v. Cohen Law Offices, 21 F.3d 512, 521-22 (2d Cir. 1994); Nolte v. Pearson, 994 F.3d 1311, 1316-17 (8th Cir. 1993); Baumer v. Pachl, 8 F.3d 1341, 1344 (9th Cir. 1993); Marshall v. Fenstermacher, No. 04-3477, 2007 WL 2892938, at *9 (E.D. Pa. Oct. 2, 2007) ("courts have often acknowledged . . . that it is difficult for an attorney to be liable [under RICO] for performing ordinary legal tasks because such tasks often do not entail the 'operation or management' of an enterprise.'").  Plaintiffs do not identify any purported actions taken by Pepper Hamilton outside of the scope of their legal representation of a client, or in furtherance of the alleged common purpose of the enterprise.  For these reasons, the Court should dismiss Count III against Pepper Hamilton.

### (2) Morgan Lewis and Kline

Plaintiffs' RICO claims against Morgan Lewis and Kline, in Counts I and II, arise out of their legal representation of Tiversa and The Privacy Institute from 2004 to 2011, and of Kline's alleged participation in Tiversa's legal representation in *Georgia I.*  Plaintiffs note that Kline was

copied on a July 23, 2008 email from Boback.  ECF No. 1 ¶ 188.  Plaintiffs "believe" that Morgan Lewis was involved in similar "heavy handed" solicitations by Tiversa.  Id. ¶¶ 238, 250, 262, 274, 286, 294.  Plaintiffs also allege that Morgan Lewis helped to form The Privacy Institute "in a surreptitious manner," helped The Privacy Institute respond to the FTC's subpoena, and represented The Privacy Institute until its dissolution in 2013.  Legal services that Morgan Lewis provided allegedly "helped Boback and others manage and operate Tiversa, especially to effectuate the Tiversa Business Model."  Id. ¶ 103.  As a result of this conduct, Plaintiffs claim that Morgan Lewis and Kline committed mail fraud, wire fraud, obstruction of justice, and violated the National Stolen Property Act ("NSPA").

In their Motion to Dismiss, Defendants argue that Plaintiffs cannot establish causation, because they do not tie any of their alleged injuries to conduct by Morgan Lewis.  Plaintiffs do not identify any contact from Morgan Lewis to Plaintiffs, with the exception of one email on which Kline was copied, and the FTC's investigation was the result of independent conduct of a third party.  ECF No. 273 at 16.  In addition, Plaintiffs do not plead that Morgan Lewis was part of the purported enterprise, because the allegations do not show Morgan Lewis shared a "common purpose" with any of the various members of the enterprise, and Plaintiffs have not pleaded facts showing that Morgan Lewis participated in the "operation or management" of the enterprise.  Finally, Morgan Lewis argues that the allegations in Plaintiffs' Complaint do not give rise to violations of any predicate acts.

In their Brief in Opposition, Plaintiffs argue that these Defendants participated in the "operation and management" of the enterprise, because they helped Tiversa "develop Tiversa's

board of directors, advisory board and each step of Tiversa's Business Model."[23]  ECF No. 284 at

19.  Plaintiffs further argue that Defendants caused their injury, because Morgan Lewis and Kline

provided the FTC with the 1718 File,[24] which caused the FTC to investigate LabMD.  Id. at 22-

23.  Plaintiffs assert that the Complaint sets forth a basis for all of the predicate acts, and a pattern

of racketeering is established through "Morgan Lewis' role in the creation and management of

Tiversa, their role in the creation and implementation of Tiversa's Business Model, and their role

in a sham company whose sole purpose was to allow Tiversa to make fraudulent statements and

material omissions to the FTC."  Id. at 24.

     Upon review, Count III should also be dismissed on the merits as to Defendants Morgan

Lewis and Kline.  Plaintiffs do not sufficiently plead that these Defendants committed at least two

predicate acts, and therefore have not pleaded that these Defendants engaged in a "pattern of

racketeering activity."  With respect to Defendants' purported obstruction of justice under 18

U.S.C. § 1503, Plaintiffs allege that Defendants Kline and Morgan Lewis "corruptly influenced,

obstructed or impeded the due administration of justice" and "corruptly endeavored to influence,

intimidate, or impede an officer in or of a court of the United States."  ECF No. 1 ¶¶ 459-461.  To

the extent Plaintiffs' allegations rest on purported interference with the FTC's investigation, 18

U.S.C. § 1503 pertains to federal judicial proceedings, and therefore does not apply.  See U.S. v.

---

[23] According to Plaintiffs, the "Tiversa Business Model" involves four steps: Tiversa steals private, confidential, and classified files; it lies to its targets about the source of the files; it threatens to report reluctant targets to law enforcement authorities; and it retaliates against targets that refuse to hire Tiversa.  ECF No. 1 ¶ 61.

[24] Plaintiffs assert that "Morgan Lewis and Kline are directly responsible because *they* gave the FTC LabMD's name and its 1718 File in August of 2009," but the allegation Plaintiffs cite in support of this position, ECF No. 1 ¶ 97, indicates that Tiversa provided the FTC with this list of companies and does not refer to the 1718 File.  See ECF No. 1 ¶ 97 ("In August of 2009, Tiversa followed through on its threats to LabMD and other companies by turning the List over to the FTC.  The FTC thereafter opened investigations on and prosecuted many companies on the List, including LabMD").  Elsewhere, Plaintiffs allege that Morgan Lewis and Kline "reviewed and were fully aware" of the List and contents of documents produced in response to the FTC subpoena.  Id. ¶ 110.

George, 625 F.2d 1081, 1087 (3d Cir. 1980); U.S. v. Ryan, 455 F.2d 728, 733 (9th Cir. 1971) (federal agency investigation is not a "judicial proceeding" under Section 1503). As to Plaintiffs' claim that Defendants obstructed justice due to "Defendant Kline's participation in fraud on the Court in *Georgia I*," this conduct also does not violate 18 U.S.C. § 1503. For the reasons discussed above, the omission of certain contacts with Georgia in the Boback Declaration did not have the "natural and probable effect of interfering with the due administration of justice," because the omitted contacts did not give rise to personal jurisdiction, and *Georgia I* was dismissed without prejudice. U.S. v. Blair, 661 F.3d 755, 766 (4th Cir. 2011). Additionally, this conduct only relates to Defendant Kline.[25]

Second, as to the alleged violation of the NSPA by Morgan Lewis and Kline, this statute criminalizes the transportation in interstate or foreign commerce of stolen "goods, wares, and merchandise" of a value of $5,000 more, stolen "securities," or "falsely made, forged, altered, or counterfeited securities." 18 U.S.C. § 2314. Plaintiffs claim the stolen property at issue is the 1718 File. There are no allegations, however, that Morgan Lewis or Kline transported the 1718 File in interstate or foreign commerce. Moreover, this statute does not encompass stolen digital files. U.S. v. Zhang, 995 F. Supp. 2d 340, 346-48 (E.D. Pa. 2014) (holding that "the NSPA does not criminalize the theft . . . of intangible property in an intangible form"). To the extent Plaintiffs argue that Tiversa made the 1718 file an "item of commerce" by requesting payment from LabMD, they offer no legal support for this position.

---

[25] The Court notes that Defendant Kline was not counsel of record in *Georgia I*, and there are no allegations that he personally made any representations to the district court in that case. As previously discussed in Section II(D)(2)(b)(ii)(1), Plaintiffs' RICO claims against Defendant Kline should also be dismissed with respect to his alleged representation of Tiversa in *Georgia I*, because Plaintiffs cannot establish causation.

Finally, with respect to Plaintiffs' allegations of mail and wire fraud, these statutes require "(1) the defendant's ***knowing and willful participation*** in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of mails or interstate wire communications in furtherance of the scheme." Zazzali v. Hirschler Fleischer, P.C., 482 B.R. 495, 515 (D. Del. 2012) (citing U.S. v. McGeehan, 584 F.3d 560, 565 (3d Cir. 2009)). The elements of these claims must be pled with "particularity." Id. (citing Fed. R. Civ. P. 9(b); Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004)). Here, Plaintiffs allege that Morgan Lewis and Kline "knew that a representative of Tiversa committed fraud" in responding to the FTC's subpoena, and, upon "information and belief" they "encouraged and/or enabled" Tiversa's response. Absent factual allegations from which Defendants' knowing participation can be inferred, Plaintiffs' Complaint does not adequately allege mail or wire fraud. See Zazzali, 482 B.R. at 515 (recitation of allegations that defendant had "knowledge" or "knew" of fraudulent scheme was inadequate to plead knowledge) (citing Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")); see also Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295, 313 (D. N.J. 2005) ("[I]t is well settled that Rule 9(b) applies even when the fraud relates to matters within the knowledge of the defendant and that allegations based on information and belief do not satisfy Rule 9(b) unless the complaint sets forth the facts upon which the belief is founded.") (quoting Driscoll v. Landmark Bank for Savings, 758 F. Supp. 48, 52 (D. Mass. 1991)).[26]

---

[26] In their Complaint, Plaintiffs also assert that Morgan Lewis and Kline "attempted and/or conspired to commit" violations of 18 U.S.C. § 1030(b) (computer fraud and abuse), 18 U.S.C. § 1029(b)(1) and (2) (access device fraud), and 18 U.S.C. § 1028(f) (identity fraud). ECF No. 1 ¶¶ 436, 448, 475. As these Defendants point out, however, 18 U.S.C. § 1030 is not a predicate act under the RICO statute. See ECF No. 273 at 28 n. 8 (citing 18 U.S.C. § 1961(1)). Moreover, Plaintiffs do not plead facts to support these Defendants' purported violations of these statutes and do not address these alleged crimes in their Brief in Opposition.

In their Brief in Opposition, Plaintiffs also assert that these Defendants engaged in witness retaliation under 18 U.S.C. § 1513 and committed the Unlawful Possession and Use of Personal Health Information under 42 U.S.C. § 1320d-6.  Plaintiffs do not allege that Defendants Morgan Lewis and Kline committed these predicate acts in their Complaint, and therefore these violations cannot form the basis for Plaintiffs' "pattern of racketeering" claims.[27]  ECF No. 1 ¶ 465 (asserting that Defendants Boback, Tiversa and Does 1-10 engaged in witness retaliation); see also Bos v. Prime Care Med., Inc., No. 17-5124, 2018 WL 3032853, at *5 n. 6 (E.D. Pa. June 18, 2018) (noting that plaintiff cannot assert new claims in response to a motion to dismiss).  Further, Plaintiffs have not pleaded factual allegations that would support a violation of 18 U.S.C. § 1513, which criminalizes efforts to kill, attempt to kill, threaten, or cause bodily harm to witnesses, victims, and informants, and 42 U.S.C. § 1320d-6 is not a predicate offense under the federal RICO statute. See 18 U.S.C. § 1961(1).[28]

With respect to the alleged enterprise, Plaintiffs argue that legal services provided by Defendants "helped others manage and operate Tiversa, especially to effectuate the Tiversa business model," but the Complaint does not identify facts supporting these two Defendants' own participation in the management and operation of the enterprise.  Additionally, Plaintiffs do not plead facts supporting that Morgan Lewis and Kline engaged in the "common purpose" of

---

[27] The Complaint does, however, allege that these Defendants conspired to commit a violation of 18 U.S.C. § 1513. ECF No. 1 ¶ 490.

[28] The alleged factual basis for Plaintiffs' witness retaliation claim against Morgan Lewis and Kline is unclear.  To the extent Plaintiffs argue that Morgan Lewis "attempted to strong-arm LabMD during Tiversa's threats to report LabMD to the FTC if LabMD did not pay," however, the Court notes that this is not supported by the allegation Plaintiffs cite.  See ECF No. 284 at 3 (citing ECF No. 1 ¶ 188).  Plaintiffs' Complaint indicates that Defendant Kline was copied on an email from Boback to LabMD, and the email states in part: "Per your question, our counsel (copied above) has suggested that you provide written confirmation that you have" notified individuals whose social security numbers may have been disclosed.   ECF No. 1 ¶ 188.

"commercially benefit[ing] by making misrepresentations about data privacy and security breaches." Plaintiffs' allegations arise out of legal services Defendants provided Tiversa. Accordingly, Count III should also be dismissed as substantively deficient with respect to Defendants Morgan Lewis and Kline.

### (3) Tarquinio

Plaintiffs' claims against Tarquinio arise out of allegations that he was the sole officer of The Privacy Insitute, and he allegedly participated with Defendants Kline, Morgan Lewis, Tiversa and Boback in providing the 1718 File and false documents to the FTC through The Privacy Institute. As predicate acts, Plaintiffs claim that Tarquinio's conduct violated the mail fraud and wire fraud statutes, as well as the NSPA.

In his Motion to Dismiss, Tarquinio argues that Plaintiffs fail to state a substantive RICO claim against him because Plaintiffs' allegations are "formulaic in nature and littered with legal conclusions." ECF No. 265 at 41. He contends that Plaintiffs have not identified facts regarding the details of when or how Tarquinio purportedly committed criminal acts or to whom such acts relate, and therefore Plaintiffs' claims do not satisfy pleading standards under Iqbal and Twombly. Id. at 41.

Plaintiffs dispute that they "merely assert the formulaic legal conclusions" against Tarquinio, and contend that there are "specific, detailed allegations against Tarquinio throughout the Complaint, including allegations about his involvement in underlying torts." ECF No. 282 at 33. Plaintiffs proceed to identify allegations in their Complaint related to Tarquinio, but do not provide any analysis regarding how these allegations relate to the elements of any of their claims, including their RICO claims.

48

Having failed to provide any substantive response regarding the merits of their RICO claims, dismissal is proper because Plaintiffs have waived this argument.  The Court also finds that Plaintiffs' Complaint fails to allege with particularity the underlying racketeering acts of mail fraud, wire fraud, or violations of the National Stolen Property Act.  As discussed above, the NSPA does not encompass the transfer of the 1718 File, and Plaintiffs do not make any allegations that Tarquinio transported any property in interstate or foreign commerce.[29]  With respect to Defendants' mail and wire fraud claims, Plaintiffs do not plead anything other than conclusory allegations that Tarquinio knowingly and willfully participated in a scheme to defraud LabMD.  Additionally, there are no allegations that Tarquinio participated in the "operation or management" of the purported enterprise.  Therefore, this claim is properly dismissed.

### iii.   Substantive Deficiency: Count II

In Count II, Plaintiffs also assert a federal RICO Conspiracy claim against Morgan Lewis, Kline, Pepper Hamilton, Dartmouth, and the Individual Defendants under 18 U.S.C. § 1962(d).  Proof of a RICO conspiracy requires a showing that: (1) the defendant agreed to the overall objective of the conspiracy; or (2) that the defendant agreed to commit two predicate acts.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 373 (3d Cir. 2010).  Plaintiffs do not have standing to assert a civil RICO conspiracy claim unless their injuries resulted from the violation of a substantive provision of RICO.  Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146, 1153 (11th

---

[29] Plaintiffs also assert that Tarquinio "attempted and/or conspired to commit" violations of 18 U.S.C. § 1030(b) (computer fraud and abuse), 18 U.S.C. § 1029(b)(1) and (2) (access device fraud), and 18 U.S.C. § 1028(f) (identity fraud).  ECF No. 1 ¶¶ 436, 448, 475.  As noted above, a violation of 18 U.S.C. §1030 is not a RICO predicate act.  Moreover, Plaintiffs do not identify the alleged factual basis for these claims.

Cir. 2011).  Because Plaintiffs fail to plead a substantive RICO claim, their conspiracy claims should also be dismissed.

### c.  LabMD's Georgia RICO Claims (Counts III and IV)

Plaintiffs assert Counts III and IV pursuant to Georgia's RICO statute, O.C.G.A. § 16-14-4.  For the reasons set forth below, the Court recommends that these claims be dismissed because they are barred by the statute of limitations and are substantively deficient.[30]

### i.  Statute of Limitations

All Defendants argue that Plaintiffs' Georgia RICO claims should be dismissed based on the statute of limitations.  Georgia's RICO statute provides a five-year statute of limitations period.[31]  Prior to July 1, 2015, Georgia's RICO statute provided that "a criminal or civil action

---

[30] The Individual Defendants, Boback, Tiversa, and Pepper Hamilton argue that Plaintiffs' Georgia RICO claims should be dismissed because Pennsylvania law applies to this claim, and Pennsylvania law does not provide a private civil cause of action for RICO claims.  Because the Court concludes that dismissal is proper regardless of whether Pennsylvania or Georgia law applies, it is not necessary to engage in a choice-of-law analysis.  See Taylor v. Mooney Aircraft Co., 265 F. App'x 87, 90 (3d Cir. 2008) (noting that court "first must identify whether there are relevant differences between the states' laws that would affect the disposition of the litigation" before conducting further conflict-of-law analysis).

[31] Plaintiffs previously argued that Pennsylvania's four-year statute of limitations should apply to their Georgia RICO claims upon transfer, and Pepper Hamilton and Tiversa forward the same argument here.  See ECF No. 268 at 14 n. 14; ECF No. 271 at 6; see also Berger v. Cushman & Wakefield of Pa., Inc., No. 13-cv-5195, 2017 WL 3582229, at *7 (E.D. Pa. Aug. 18, 2017) (holding that, under Pennsylvania's choice-of-law rules, the Pennsylvania statute of limitations should apply unless the claim accrued in a foreign jurisdiction and, for a claim that accrues in a foreign jurisdiction, Pennsylvania's borrowing statute provides that the limitations period is the shorter of the Pennsylvania limitations period or the foreign state's limitation period).  The parties acknowledge, however, that Pennsylvania law does not provide a corresponding civil cause of action under its racketeering statute, 18 Pa. C.S. § 911, and they do not identify which Pennsylvania statute of limitations arguably applies and why.  In their appeal from the Transfer Order, Plaintiffs informed the Court of Appeals for the Eleventh Circuit that a four-year statute of limitations would apply under Pennsylvania law because this Court applied a four-year statute of limitations to LabMD's fraud claims in *Pennsylvania I*.  App. Br. at 40 n. 3.  That representation is inaccurate.  Fraud claims are subject to a two-year statute of limitations period under Pennsylvania law, and the Court applied that two-year statute of limitations.  See LabMD v. Tiversa, Case No. 15-92 (W.D. Pa. 2015), ECF No. 166 at 16 ("The Pennsylvania statute of limitations for fraud is two years."); see also ECF No. 185 (adopting Report and Recommendation).

In the absence of any specific four-year limitations period identified under Pennsylvania law, it appears the parties may be referring to the four-year statute of limitations for federal RICO claims.  Pepper Hamilton specifically invokes the federal limitations period in its Motion to Dismiss.  However, the parties do not brief the potential

proceeding under this chapter may be commenced up until five years after the conduct in violation of a provision of this chapter terminates or the cause of action accrues."  O.C.G.A. § 16-14-8. Courts interpreting this statute held that the limitations period begins to run "when the plaintiff discovers, or reasonably should have discovered, that he has been injured and that his injury is part of a pattern."  Cochran Mill Assocs. v. Stephens, 648 S.E.2d 764, 770 (Ga. Ct. App. 2007).  A "pattern" for purposes of Georgia's RICO Act consists of at least two incidents of racketeering activity "in furtherance of one or more incidents, schemes, or transactions with the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics."  O.C.G.A. § 16-14-3(4)(A).  "Racketeering activity" consists of Georgia state law crimes set forth in O.C.G.A. § 16-14-3(5)(A), any conduct defined as "racketeering activity" under the federal RICO statute, and certain crimes chargeable under federal law and punishable by imprisonment of more than a year, including theft, receipt of stolen property, bribery, and extortion.[32]

As of July 1, 2015, the Georgia legislature amended the statute of limitations provision to eliminate the language referring to "when a cause of action accrues," and the statute currently

---

applicability of this federal statute of limitations under Pennsylvania's choice-of-law rules.  Because the Court finds that Plaintiffs' claims are properly dismissed regardless of whether a two, four, or five-year statute of limitations applies, however, it is not necessary to resolve this issue.

[32] As predicate acts, Plaintiffs assert violations of O.C.G.A. § 16-9-1(forgery); O.C.G.A. § 16-9-93 (computer theft, computer trespass, computer invasion of privacy, computer forgery, and computer password disclosure); O.C.G.A. § 16-9-21 (identity fraud); O.C.G.A. § 16-10-70 (perjury); O.C.G.A. § 16-10-93 (witness tampering); O.C.G.A. § 16-14-3(5)(b) and (c)(racketeering activity); 18 U.S.C. § 1028 (identity fraud); 18 U.S.C. § 1029 (access device fraud); 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1344 (bank fraud); 18 U.S.C. § 1462 (obscene matters); 18 U.S.C. § 1503 (obstruction of justice); 18 U.S.C. § 1512 (witness tampering); 18 U.S.C. § 1513 (witness retaliation); 18 U.S.C. § 1957 (money laundering); 18 U.S.C. § 1030 (computer fraud and abuse); 18 U.S.C. § 2252A (child pornography); 18 U.S.C. § 2319 (criminal infringement of a copyright); 18 U.S.C. § 2314 (National Stolen Property Act).  ECF No. 1 ¶¶ 443-487, 499-519.

provides that an action "shall be commenced up until five years after the conduct in violation of a provision of this chapter terminates." O.C.G.A. § 16-14-8. This amendment cannot be applied, however, to revive a claim that had already expired before its effective date of July 1, 2015. Glock, Inc. v. Harper, 796 S.E.2d 304, 306 (Ga. Ct. App. 2017). Thus, if the pre-amendment statute of limitations barred LabMD's Georgia RICO claims by July 1, 2015, no further analysis is required under the amended statute.

Upon review, the Court recommends that Plaintiffs' Georgia RICO claims be dismissed under the pre-amendment statute of limitations because LabMD knew or should have known of its injury, and that the injury was part of a pattern, by no later than July 1, 2010. For the reasons previously discussed, LabMD became aware of its injury upon notice the FTC initiated an investigation into LabMD by January 19, 2010.

By January 19, 2010, Plaintiff's allegations also indicate that they knew, or should have known, of the facts giving rise to the alleged "pattern of racketeering" in this action, which consists of at least two acts of racketeering activity. O.C.G.A. § 16-14-3(A). Here, Plaintiffs admit they investigated and became aware of the purported theft of the 1718 File shortly after it occurred, in 2008. See ECF No. 286 at 2-3 (noting that LabMD "immediately investigated . . . and concluded that Tiversa must have hacked into and taken the 1718 File directly from the folder where the file was stored on a single workstation"). As a result, Plaintiffs therefore knew or should have known of facts forming the basis of the alleged violations of O.C.G.A. § 16-9-93 (Georgia computer crimes), 18 U.S.C. § 2314 (National Stolen Property Act); and 18 U.S.C. § 1029 (Access Device Fraud), among others, by 2008. See ECF No. 1 ¶¶ 160 (identifying alleged violations of criminal statutes as a result of Tiversa's theft of the 1718 File). Additionally, the Dartmouth Paper, which identified Tiversa as a source of its information, was published in January 2009, and it received a

"great deal of media attention." See id. ¶¶ 203-04. Plaintiffs therefore knew or should have known of facts giving rise to alleged predicate acts involving the Dartmouth Defendants by 2009, including violations of O.C.G.A. § 16-9-93 (Georgia computer crimes). See id. ¶ 169 (identifying alleged violations of criminal statutes as a result of Tiversa and the Dartmouth Defendants' joint conduct).

Thus, Plaintiffs knew, or should have known, of their alleged injury and two or more purported acts of racketeering alleged in their Complaint by early 2010. Because Plaintiffs did not file this action until 2016, it is time barred under the five-year statute of limitations. Equitable tolling does not apply, because Plaintiffs had sufficient knowledge to advance their RICO claim within the statute of limitations. Charter Peachford Behavioral Health Sys. v. Kohut, 504 S.E.2d 514, 522 (Ga. Ct. App. 1998) (holding that, for equitable tolling to apply, "[t]he fraud must conceal the cause of action and cut plaintiff off from suing . . . "). Accordingly, the Court should dismiss Plaintiffs' Georgia RICO claims as time barred.

### ii.    Substantive Deficiency

Defendants also move to dismiss Plaintiffs' Georgia RICO claims as substantively deficient. Georgia's RICO statute prohibits the following conduct:

(a) It shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money.

(b) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity.

(c) It shall be unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (a) or (b) of this Code section. A person violates this subjection when

(1)  He or she with one or more persons conspires to violate any of the provisions of subsections (a) or (b) of this Code Section and any one more of such persons commits any overt act to effect the object of the conspiracy; or

(2)  He or she endeavors to violate any of the provisions of subsection (a) or (b) of this Code section and commits any overt act to effect the object of the endeavor.

O.C.G.A. § 16-14-4(a)-(c).

The Georgia RICO statute provides a civil cause of action for individuals that are injured by a violation of § 16-14-4.  O.C.G.A. § 16-14-6.  "To assert a civil claim based upon either a violation of the RICO statute or conspiracy to violate that statute, a plaintiff must show that the defendants violated or conspired to violate the RICO statute; that as a result of this conduct the plaintiff has suffered injury; and that the defendant's violation of or conspiracy to violate the RICO statute was the proximate cause of the injury."  Wylie v. Denton, 746 S.E.2d 689, 693 (Ga. Ct. App. 2013).

With respect to their substantive Georgia RICO claim, Count III, Plaintiffs allege that Defendants Boback, Chopra, Kline, Tarquinio, Morgan Lewis, Pepper Hamilton, Tiversa, and the Dartmouth Defendants violated subsection (b).[33]  Similar to the federal RICO statute, in order to establish a violation of § 16-14-4(b), Plaintiffs must prove the existence of an enterprise and a connected "pattern of racketeering activity."   In their Complaint, Plaintiffs' "enterprise" allegations are based upon the same alleged "common purpose" and violations of federal law as their federal RICO claims, in addition to alleged violations of Georgia state law and federal law cognizable under Georgia's RICO statute.

---

[33] Although Plaintiffs do not indicate whether they are proceeding under subsection (a) or (b), their pleadings track the language of subsection (b).

While Georgia's RICO's statute is modeled after the federal RICO statute and federal authority is persuasive, the Georgia RICO statute is broader in some respects. See MacDonald v. SunTrust Mortgage, Inc., No. 1:09-cv-1805, 2010 WL 11647012, at *15 (N.D. Ga. Aug. 10, 2010). Unlike the federal RICO statute, although some participation by defendant in a racketeering activity is required, at least some authority holds that Georgia's statute does not require "a directorial or managerial position" in the enterprise for liability to attach. Faillace v. Columbus Bank & Trust Co., 605 S.E.2d 450, 454 (Ga. Ct. App. 2004); but see J&D Intern Trading (Hong Kong) Ltd. v. MTD Equip., LLC, No. 1:13-cv-2526, 2014 WL 1683375, at *14 (N.D. Ga. April 28, 2014) (applying Reves requirement that a defendant participate in the "operation or management" of the enterprise under the Georgia RICO statute). Although a pattern of racketeering must consist of at least two incidents of racketeering activity, each defendant is simply required to have participated in the pattern, whether by one act or more. Faillace, 605 S.E.2d at 868. With respect to the "pattern of racketeering," Georgia law requires that the predicate acts be interrelated,[34] but the Georgia RICO statute does not impose a "continuity" requirement to show that a defendant would continue the conduct or had been guilty of similar prior conduct. Larson v. Smith, 391 S.E.2d 686, 688 (Ga. Ct. App. 1990).

### (1) Tiversa and Boback

Plaintiffs' Georgia RICO claims against Tiversa and Boback arise out of their alleged role in conducting the purported shakedown scheme, and Plaintiffs claim that these Defendants violated numerous criminal statutes, including perjury, witness tampering, obstruction of justice, and

---

[34] Predicate acts will be considered interrelated where they "have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents." O.C.G.A. § 16-14-3(8)(A).

violations of Georgia's Computer Crime statute.  In their Motions to Dismiss, Tiversa and Boback argue that Plaintiffs fail to state a Georgia RICO claim, because they have not pleaded that these Defendants directly caused their harm.  ECF No. 271 at 12; ECF No. 275 at 7.  Under the relevant standard, "a plaintiff seeking to prove injury 'by reason of' a RICO predicate act must show that the predicate act was the proximate cause of his injury."  ECF No. 271 at 13 (citing American Ass'n of Cab Companies, Inc. v. Parham, 661 S.E.3d 161, 166 (Ga. Ct. App. 2008)).  Here, Defendants argue, Plaintiffs cannot establish proximate cause because their alleged injuries were caused by the FTC's investigation and enforcement action.  ECF No. 271 at 13-17; ECF No. 275 at 7.  It was the FTC's independent conduct, and not Tiversa's alleged fraud (turning the file over the FTC) that directly resulted in Plaintiffs' loss.  Tiversa further notes that Plaintiffs cannot directly tie any of the predicate acts attributed to Tiversa/Boback (including forgery, computer crimes, identity fraud, perjury, witness tampering, and racketeering activity) to the FTC's decision to investigate, and argue that most of these acts occurred after the investigation had already commenced.  In addition, Tiversa argues, the FTC's opinion indicates that it did not rely on information provided by Tiversa in finding against LabMD.

In their Briefs in Opposition, Plaintiffs do not oppose Defendants' arguments regarding the substance of their Georgia RICO claims.  ECF Nos. 281, 286.  Plaintiffs only argue that this claim has already been dismissed, and that it is not barred by the statute of limitations.  Accordingly, Plaintiffs have waived their opposition to Tiversa and Boback's argument on the merits, and Plaintiffs' Georgia RICO claims, Counts III and IV, against Tiversa and Boback should be dismissed.

### (2) Dartmouth Defendants

Plaintiffs assert Georgia RICO claims against the Dartmouth Defendants based on allegations that Defendant Johnson, a professor at Dartmouth College, published the Dartmouth Paper as part of the scheme to extort LabMD and retaliate against LabMD for not purchasing Tiversa's cybersecurity services.   In connection with this activity, Plaintiffs allege that the Dartmouth Defendants committed various "Computer Crimes" under O.C.G.A. § 16-9-93, including computer theft, computer trespass, computer invasion of privacy, and computer forgery. Plaintiffs also allege that the Dartmouth Defendants committed "racketeering activity" under O.C.G.A. § 16-14-3(5)(b) and (c).

In their Motion to Dismiss, the Dartmouth Defendants argue that Plaintiffs do not plead a viable "enterprise" under Georgia's RICO statute, because the Dartmouth Defendants had no financial stake in Tiversa, and there are no plausible allegations that the they would want to "threaten" or "retaliate" against LabMD, particularly given that the Dartmouth Paper did not identify LabMD.   They also contend that Plaintiffs do not plausibly allege the Dartmouth Defendants committed any predicate acts.  Plaintiffs cannot establish willful intent as to any of the purported crimes, and the Dartmouth Defendants did not obtain the 1718 File "without authority," as required to violate O.C.G.A. § 16-9-1, because LabMD admits that the 1718 File was "inadvertently available on one of its computers."  Finally, the Dartmouth Defendants argue that Plaintiffs cannot establish causation, because Tiversa shared the 1718 File with the FTC, and Plaintiffs do not allege that the Dartmouth Paper caused Plaintiffs' harm.

In opposition, Plaintiffs contend that an enterprise existed, because the Dartmouth Defendants had a self-described partnership with Tiversa.  They had a financial stake in making misrepresentations because the Dartmouth Paper was part of a federally funded research study,

and "[g]rant money is the lifeblood of an academician." ECF No. 283 at 7. With respect to the predicate acts, Plaintiffs dispute that the 1718 File was "publicly available" and argue that Defendants were aware of their wrongdoing, because Johnson was familiar with Tiversa's technologies and the security requirements of HIPAA. Id. at 7-9.

Plaintiffs' Georgia RICO claim should also be dismissed against the Dartmouth Defendants as substantively deficient. In order to state a claim, Plaintiffs must allege a causal nexus between the predicate acts and the injury purportedly sustained. Wylie, 746 S.E.2d at 693. With respect to these Defendants, Plaintiffs fail to respond to Defendants' argument regarding causation and have not identified a purported injury arising of the Dartmouth Defendants' actions. Plaintiffs do not allege that the Dartmouth Paper, which does not identify LabMD, was a source of its alleged harm. Moreover, Plaintiffs do not plead facts establishing that the Dartmouth Defendants engaged in an enterprise for the "common purpose" of "commercially benefit[ing] by making misrepresentations about data privacy and security breaches." To the contrary, Plaintiffs argue that the Dartmouth Paper was an academic paper authored pursuant to a federal grant, and they do not identify any purported financial stake in Tiversa. Accordingly, Count III should be dismissed against the Dartmouth Defendants.

### (3) Chopra

Plaintiffs assert Georgia RICO claims against Chopra, a Tiversa employee. In their Complaint, Plaintiffs allege that Chopra committed perjury, mail fraud, wire fraud, obstruction of justice, and racketeering activity when she made false statements in an April 17, 2015 affidavit that she filed in an FTC administrative enforcement action against LabMD. Id. ¶ 409.

Chopra argues that Plaintiffs claims should be dismissed, because the claims are formulaic in nature, and they do not provide facts for the predicate acts asserted. ECF No. 265 at 43. In their

Brief in Opposition, Plaintiffs deny that they have failed to allege any facts establishing Chopra's involvement in any underlying tort, but Plaintiffs fail to provide any substantive analysis regarding how her conduct allegedly violates the Georgia RICO statute, or any other cause of action in Plaintiffs' Complaint.[35]

Because Plaintiffs fail to substantively respond, they have waived their argument in opposition to dismissal of Plaintiffs' claim. Moreover, the Court finds that Plaintiffs' allegations do not support a Georgia RICO claim against Chopra. With respect to the April 2015 affidavit, this affidavit contains statements such as "[p]roposed Exhibit CX1008 was created using Microsoft Exchange Version 6.5" and "Proposed Exhibit CX1008 was created on November 9, 2012 at 12:08 PM." See ECF No. 1 ¶ 409. Plaintiffs do not describe how any statement was false, how Chopra knew it was false, or the alleged the relevance of this affidavit to the Enforcement Action. Even if this affidavit contained false information, Plaintiffs do not identify any purported injury caused by those false statements. Chopra's affidavit was filed after Wallace testified in 2014, allegedly disclosing Tiversa's fraudulent behavior, and after LabMD had been out of business for over a year. See ECF No. 293 at 32 (incorporating by reference LabMD v. Tiversa, Case No. 15-92, ECF No. 19 at 27). Accordingly, this claim against Chopra should be dismissed.

### (4) Pepper Hamilton

Plaintiffs' Georgia RICO claim against Pepper Hamilton relies on the same conduct as their federal RICO claims. For the same reasons as Plaintiffs' federal RICO claim, this claim

---

[35] Plaintiffs also do not discuss Chopra's alleged perjury or the 2015 affidavit in their Brief in Opposition. For the first time, they allege that Chopra "created Tiversa's Technologies," ECF No. 282 at 14, but this allegation does not appear in Plaintiffs' Complaint, and Plaintiffs do not provide analysis regarding this allegation.

should be dismissed because Plaintiffs do not sufficiently plead that Pepper Hamilton was a member of the alleged enterprise,[36] or that its conduct caused Plaintiffs' injuries.

### (5) Morgan Lewis, Kline and Tarquinio

Plaintiffs' Georgia RICO claims against Morgan Lewis, Kline, and Tarqunio rely on the same alleged conduct as their federal RICO claims.[37]  Plaintiffs' failure to plead facts showing that these Defendants engaged in a "pattern of racketeering activity" under the federal RICO statute accordingly defeats their Georgia RICO claim as to these Defendants.  See, e.g., Simons v. Sanderson Farms, Inc., 744 F.3d 702, 705 n. 1 (11th Cir. 2014) ("[W]here a plaintiff fails to state a federal claim under a particular predicate, his state-law claim under that predicate will fail as well.").  As with Plaintiffs' federal RICO claim, Plaintiffs also fail to substantively respond to Tarquinio's argument that he fails to assert facts in support of his claim, and therefore dismissal is also proper on this basis with respect to Tarquinio as well.

### iv.   Substantive Deficiency: Count IV

Plaintiffs also claim in Count IV that the Individual Defendants, the Dartmouth Defendants, Morgan Lewis, Kline, Pepper Hamilton, Tiversa and Boback engaged in a Georgia RICO conspiracy, under O.C.G.A. § 16-14-4(c).  Because Plaintiffs does not state a claim for violation of a substantive Georgia RICO provision, these claims should also be dismissed.  See

---

[36] The Court notes, however, that its discussion regarding whether Defendants engaged in the management and operation of the enterprise is not dispositive with respect to Plaintiffs' Georgia RICO claims.  See Faillace, 605 S.E.2d at 454.

[37] Plaintiffs additionally claim that Defendants engaged in "racketeering activity" under O.C.G.A. § 16-14-3(5)(B) and (C).  The latter of these claims incorporates alleged violations of the federal RICO provisions, which have previously been discussed.  O.C.G.A. § 16-14-3(5)(B) includes a variety of additional crimes "chargeable under the laws of the United States . . . or any state," and Plaintiffs allege that all Defendants "received stolen property, committed extortion and/or obstructed justice."  With respect to this claim, however, Plaintiffs' Brief in Opposition does not identify violations of any specific criminal provisions beyond those previously addressed.

G&G TIC, LLC v. Alabama Controls, Inc., 324 F. App'x 795, 798 (11th Cir. 2009) (holding that dismissal of Georgia RICO conspiracy claim was proper where underlying substantive RICO claim had been dismissed).

### 3. Computer Fraud and Abuse Act and Georgia Computer Systems Protection Act Claims (Counts V and VI)

Plaintiffs assert Counts V and VI for violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, and the Georgia Computer Systems Protection Act ("GCSPA"), O.C.G.A. § 16-9-93(g), against Tiversa, Boback, and the Dartmouth Defendants.   In their Complaint, Plaintiffs allege that these Defendants violated both the CFAA and GCSPA by "downloading to an electronic storage device data files from LabMD's computer system for a reason it knew was not authorized and during a time in which it knew such access would not be authorized." ECF No. 1 ¶ 522, 527.

Under the CFAA, Plaintiffs must establish "(1) defendant accessed a 'protected computer'; (2) has done so without authorization or by exceeding such authorization as was granted; (3) has done so 'knowingly' and 'with intent to defraud'; and (4) as a result has furthered the intended fraud and obtained anything of value." Motown Record Co., L.P. v. Kovalcik, No. 07-cv-4702, 2009 WL 455137, at *3 (E.D. Pa. Feb. 23, 2009) (quoting P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC, 428 F.3d 504, 508 (3d Cir. 2005)).   A claim for civil violation of the CFAA must be brought within two years of the date of the act complained of or the date of the discovery of the damage.  18 U.S.C. § 1030(g).

The GCSPA enumerates several computer-related crimes, including computer theft, computer trespass, computer invasion of privacy, and computer forgery.  O.C.G.A. § 16-9-93. Under O.C.G.A. § 16-9-93(g), "any person whose property or person is injured as a result of a

violation of any provision this article" may bring a civil claim.  Although Plaintiffs do not allege

which specific computer crime was violated, their allegations appear to assert a claim for computer

theft under O.C.G.A. § 16-9-93(a).[38]  Under this provision, it is prohibited to use a computer or

computer network "with knowledge that such use is without authority and with the intention of:

(1) taking or appropriating property of another, whether or not with the intention of depriving the

owner of possession; (2) obtaining property by any deceitful means or artful practice; or (3)

converting the property to such person's use in violation of an agreement or other known legal

obligation to make a specified application or disposition of such property."  O.C.G.A. § 16-9-

93(a).  A civil claim under the GCSPA "must be brought within four years after the violation is

discovered or by the exercise of reasonable diligence."  O.C.G.A. § 16-9-93(g)(4).

### a.  Statute of Limitations

In their Motions to Dismiss, Tiversa, Boback, and the Dartmouth Defendants argue that

Counts V and VI are barred by the two and four-year statutes of limitations under the CFAA and

GCSPA.  Defendants contend that these claims are untimely, because Plaintiffs asserted the same

claims in *Georgia I* in 2011, more than 5 years before the Complaint was filed.  ECF No. 271 at

10; ECF No. 262 at 18.  Defendants further argue that Plaintiffs were aware of a potential issue as

early as 2008, when Boback contacted LabMD regarding the 1718 File, but certainly no later than

---

[38] Plaintiffs allege criminal violations of the computer theft, computer trespass, computer invasion of privacy, computer forgery, and computer password disclosure provisions as alleged predicate acts under Plaintiffs' Georgia RICO claim.  See ECF No. 1 ¶¶ 501-505.  Plaintiffs must allege harm in order to establish a civil violation of a provision of the GCSPA, however, they are not required to allege harm as a result of each purported violation of a criminal statute for purposes of pleading predicate acts under the Georgia RICO statute.  Accordingly, Defendants' alleged criminal violations of the computer trespass and computer invasion of privacy statutes do not necessarily give rise to a basis for civil liability against Defendants.  Under Count VI, Plaintiffs' pleading does not appear to state a claim under any provision other than computer theft, and the Plaintiffs' Complaint does not appear to claim specific injury to LabMD or Daugherty as a result of violations of the computer trespass, computer invasion of privacy, or computer password disclosure provisions.  Accordingly, the Court analyzes Plaintiffs' claim under the computer theft provision, O.C.G.A. § 16-9-93(a).

September 30, 2010, when LabMD wrote to Tiversa regarding the alleged "abuse and misappropriation" of the 1718 File.  ECF No. 275 at 5; ECF No. 262 at 18.

Although Plaintiffs dispute that they "brought these same claims" in 2011, this is inaccurate.  Plaintiffs asserted claims under these same exact statutes in *Georgia I*, based on the same underlying allegations that Johnson and Tiversa improperly accessed the 1718 File.  See LabMD v. Tiversa, Case No. 1:11-cv-4044 (N.D. Ga. 2011), ECF No. 1-1 at ¶¶ 104-137.  Indeed, Plaintiffs acknowledge this fact in their Complaint in this action.  ECF No. 1 ¶ 325 ("In the Georgia Action, LabMD included counts for violations of the Computer Fraud and Abuse Act (18 U.S.C. 1030, computer crimes under O.C.G.A. § 16-9-3, conversion, trespass and punitive damages.").  Plaintiffs' suggestion that they were not aware of their claims until 2014, when Wallace testified, is therefore clearly unsupported in light of Plaintiffs' prior lawsuit asserting these same claims in 2011.  Because there is no reasonable dispute Plaintiffs were aware of their claims by 2011, and this action was not filed until 2016, these claims should be dismissed as time barred.

### b.  Substantive Deficiency

Defendants also argue that Plaintiffs have failed to state a claim with respect to the CFAA and GCSPA.  With respect to the CFAA, Defendants argue that Plaintiffs cannot prove their CFAA and GCSPA claims because the 1718 File was publicly available.  Under the CFAA, a violation only occurs if the information is gained "without authority" or by "exceeding authority."  ECF No. 271 (citing 18 U.S.C. § 1030(a)(1)-(4)).  Defendants argue that the 1718 File was available on a P2P network, and courts have held that files located on P2P networks cannot be accessed "without authorization" or "exceeding the authorization given" because the files are located in public, shared folders.  ECF No. 271 (citing, e.g., Motown Record Co., 2009 WL 455137, at *3); ECF No. 262 at 26; ECF No. 275 at 8-9.  Tiversa additionally argues that Plaintiffs do not meet the

statutory requirement for bringing a CFAA claim, because they do not plead facts satisfying any of the subclauses of subsection (c)(4)(A)(i), as required.  ECF No. 271 at 19.

Defendants further argue that Plaintiffs' GCSPA claim fails for similar reasons, because the GCSPA requires plaintiff to demonstrate that a defendant used a computer or computer network "with knowledge that such use is without authority."  ECF No. 271 at 20 (citing 13 O.C.G.A. § 16-9-93(a)-(c); SCQuARE Int'l v. BBDO Atlanta, Inc., 455 F. Supp. 2d 1347, 1368 (N.D. Ga. 2006)); ECF No. 275 at 8; ECF No. 262 at 24.  Dartmouth additionally contends that the GCSPA requires violation "with knowledge" and "the intention" to engage in the prohibited conduct, and Plaintiffs do not plead facts establishing this intent.  ECF No. 262 at 23.

In their Briefs in Opposition to Boback and Tiversa's Motions to Dismiss, Plaintiffs do not address or respond to Defendants substantive deficiency arguments regarding Plaintiffs' GCSPA claim, or to Boback and Tiversa's substantive deficiency arguments regarding Plaintiffs' CFAA claim.  ECF Nos. 281, 283 and 286.  With respect to these Defendants and claims, dismissal is therefore also proper on this basis.[39]

### 4. Fraud, Negligence, Fraudulent Misrepresentation, and Negligent Misrepresentation Claims (Counts VII, VIII, IX, and X)

Plaintiffs assert common law fraud (Count VII), negligence (Count VIII), fraudulent misrepresentation (Count IX) and negligent misrepresentation (Count X) claims against

---

[39] Plaintiffs do not refer to their CFAA claim in response to the Dartmouth Defendants' Motion to Dismiss, but they appear to address the substance of certain arguments regarding this claim.  See, e.g., ECF No. 283 at 11 (discussing whether 1718 File was "publicly available").  Because the Court finds that Plaintiffs' CFAA claim against the Dartmouth Defendants should be dismissed based on the statute of limitations, it is not necessary to determine whether Plaintiffs have waived this argument or engage in a substantive analysis of this claim.

Hansberry, [40] Tarquinio, Morgan Lewis, Kline, Dartmouth,[41] and Pepper Hamilton.  Under either Georgia or Pennsylvania law, Plaintiffs' fraud, fraudulent misrepresentation and negligent misrepresentation claims all require, in addition to other elements: (1) a false representation; (2) justifiable or reasonable reliance on that representation; (3) plaintiff suffered damages or loss as a result of such reliance; and (4) with respect to the claims sounding in fraud, that Defendant acted with knowledge of the falsity and intent to deceive.[42]  See Home Depot U.S.A., Inc. v. Wabash Nat. Corp., 724 S.E.2d 53, 60 (Ga. Ct. App. 2012) (identifying elements of negligent misrepresentation under Georgia law); Engelman v. Kessler, 797 S.E.2d 160, 166 (Ga. Ct. App. 2017) (identifying elements of fraud under Georgia law); Clemons v. Delta Airlines, Inc., 790 S.E.2d 814, 817 (Ga. Ct. App. 2016) (identifying elements of fraudulent misrepresentation under Georgia law); Gongloff Contracting, L.L.C., v. L. Robert Kimball & Assoc., 119 A.3d 1070, 1076 (Pa. Super. 2015) (identifying elements of fraudulent and negligent misrepresentation under Pennsylvania law); Weissberger v. Myers, 90 A.3d 730, 735 (Pa. Super Ct. 2014) (identifying elements of fraud under Pennsylvania law).

Under either Georgia or Pennsylvania law, in order to state a negligence claim, Plaintiffs must establish (1) a legal duty; (2) a breach of the legal duty; (3) a causal connection between the breach and the injury; and (4) injury caused by the breach.  Boller v. Robert W. Woodruff Arts Ctr., Inc., 716 S.E.2d 713, 716 (Ga. Ct. App. 2011); see also Smith v. Scripto-Tokai Corp., 170 F. Supp. 2d 533, 536 (W.D. Pa. 2001), vacated on other grounds, 99-cv-1707, 2002 WL 1473165

---

[40] As previously discussed, Defendant Hansberry was dismissed from this case.  ECF Nos. 243, 244.

[41] Plaintiffs do not assert Counts VII, VIII, IX, X and XI against Defendant Johnson.

[42] The parties argue these claims under Georgia law, or refer to Georgia and Pennsylvania law interchangeably.  While the elements of these claims differ slightly under Georgia or Pennsylvania law, because the parties' briefing turns on common elements under Georgia and Pennsylvania law, no choice-of-law analysis is required.

(W.D. Pa. June 14, 2002).  "Before negligence can be predicated upon a given act, some duty to the individual complaining must be sought and found, the observance of which duty would have averted or avoided the injury or damage."  CSX Transp., Inc. v. Williams, 608 S.E.2d 208, 209 (Ga. 2005).  For the reasons set forth below, the claims in Counts VII, VIII, IX and X should be dismissed.

### a.  Pepper Hamilton

#### i.   Fraud, Fraudulent Misrepresentation, and Negligent Misrepresentation

In support of dismissal, Pepper Hamilton argues that Plaintiffs' claims based on fraud and their negligent misrepresentation claim require a showing of Plaintiffs' "justifiable reliance" on the representation.  ECF No. 268 at 17-18.  Plaintiffs cannot establish this element, they argue, because Plaintiffs did not actually rely on any representation by Pepper Hamilton.  Even if Plaintiffs had relied upon these statements, any such reliance would not have been reasonable, because it is unreasonable as a matter of law to rely on the representations of legal counsel in litigation.

Pepper Hamilton further argues that all of these claims fail, because Plaintiffs must establish that Pepper Hamilton's alleged conduct proximately caused Plaintiffs' damages.  Here, they argue, Plaintiffs cannot establish that the Court would have ruled in their favor absent the allegedly false statements, because those statements have no bearing on Plaintiffs' ability to establish personal jurisdiction.  Moreover, because the prior action was dismissed without prejudice, Plaintiffs did not lose the right to assert any claim and therefore have not incurred damages.

In opposition, Plaintiffs argue that they acted in justifiable reliance on Pepper Hamilton's representations because Pepper Hamilton owed a duty of candor to the tribunal pursuant to their ethical obligations as attorneys.  ECF No. 285 at 22-23.  With respect to causation, Plaintiffs argue that Pepper Hamilton's fraud resulted in *Georgia I*'s dismissal on the basis of personal jurisdiction, which caused Plaintiffs to incur the cost of filing in a foreign jurisdiction.  Id. at 24.[43]

Based on its review, the Court recommends that these claims be dismissed.  Even if it would have been reasonable for Plaintiffs to rely on Pepper Hamilton's statements, as they argue, they cannot establish that any such reliance resulted in damages.  For the reasons discussed above, Plaintiffs cannot establish that dismissal of *Georgia I* without prejudice resulted in damages, or that Tiversa's undisclosed contacts with Georgia would have given rise to personal jurisdiction in that action.  These claims therefore should be dismissed.

### ii.    Negligence

With respect to Plaintiffs' negligence claim, Pepper Hamilton argues that this claim should be dismissed because lawyers do not owe legal duties to their client's adversaries.  ECF No. 268 at 20.  Because Plaintiffs must assert some legal duty to establish a claim for negligence, their claim fails.  Id.  In addition, Pepper Hamilton argues that Plaintiffs cannot establish any causation, for the same reasons as set forth in support of dismissing Plaintiffs' fraud and misrepresentation claims.  Id. 21-24.  In opposition, Plaintiffs argue that because the allegedly fraudulent statements were made in court, Pepper Hamilton owed a duty of candor to the tribunal.  ECF No. 285 at 25.

The Court also concludes that claim should be dismissed.  For the reasons discussed above, the alleged fraudulent statements did not cause damage, and Plaintiffs therefore cannot plead a

---

[43] As noted above, Plaintiffs do not substantively address Pepper Hamilton's argument regarding whether Tiversa's undisclosed contacts with Georgia give rise to jurisdiction.

*prima facie* cause of action for negligence.  In addition, although Plaintiffs argue that Pepper Hamilton owed a duty of candor to the court, they do not identify any duty owed to Plaintiffs.  This claim therefore should be dismissed.

### b.  Dartmouth

#### i.   Statute of Limitations

Dartmouth moves to dismiss Plaintiffs' state law claims based on the statute of limitations. It notes that, under Georgia law, the statute of limitations with respect to Plaintiffs' fraud, negligence, fraudulent representation claims is four years, and it is two years under Pennsylvania law.[44]  ECF No. 262 at 18 (citing O.C.G.A. § 9-3-31; Pa. C.S.A. § 5524).  In support of dismissal, they argue that Plaintiffs do not identify any act carried out by the Dartmouth Defendants after 2009, and do not allege they learned about any act carried out by the Dartmouth Defendants after 2009.  Id. at 19.  Accordingly, they argue, these claims are clearly barred by either Georgia or Pennsylvania's statute of limitations, and Plaintiffs' conspiracy claim also fails because it arises out of these time-barred claims.  Id.

In response, Plaintiffs argue the statute of limitations did not begin to run until April 2, 2014, when Wallace "first exposed" Tiversa's frauds, arguing that "at no time" before this date did "plaintiffs have reason to know that Tiversa and the Dartmouth Defendants were lying to the FTC and others about the 1718 File."  ECF No. 283 at 1, 5.  Plaintiffs further argue that, even if the limitations period began upon the Dartmouth Defendants' fraudulent statements in 2009, all statutes of limitations were tolled while the parties were in litigation with one another.  Id.

---

[44] The parties do not brief whether the Georgia or Pennsylvania statute of limitations should apply to Plaintiffs' common law claims.  Because this issue does not affect the disposition of Plaintiffs' claims, it is not necessary to resolve this issue.

Plaintiffs further assert that their common law fraud claims are equitably tolled pursuant to O.C.G.A. § 9-3-96 and unspecified "other Georgia authorities." Id. at 2.

This claim should be dismissed. Plaintiffs' claims against Dartmouth arise out of its purported lack of authority to obtain the 1718 File and statements made in the 2009 Dartmouth Paper. Plaintiffs had knowledge of these facts by no later than 2011, when LabMD filed a lawsuit against Johnson and Tiversa in *Georgia I*. Because the instant lawsuit was not filed until 2016, it is barred under either the Georgia or Pennsylvania statute of limitations.

To the extent Plaintiffs argue their claims should be equitably tolled, there is no basis for doing so, because Plaintiffs had knowledge of their claims against the Dartmouth Defendants within the limitations period. Simply claiming that certain Defendants engaged in "fraud" does not create an open-ended statute of limitations. Moreover, Plaintiffs do not assert any authority in support of their claim that the statute of limitations have been tolled as a result of their prior lawsuits.

### ii.     Substantive Deficiency

### (1) Negligence and Negligent Misrepresentation

Dartmouth argues that Plaintiffs' negligence and negligent misrepresentation claims should also be dismissed because Plaintiffs do not assert that Dartmouth owed them any duty in publishing an academic article. Moreover, Plaintiffs do not plead facts asserting that Dartmouth's purported negligence caused Plaintiffs harm. The Court notes that the Dartmouth Paper does not identify LabMD. In their Brief in Opposition, Plaintiffs do not respond to these arguments, and therefore dismissal is also proper on substantive grounds.

### (2) Fraud and Fraudulent Misrepresentation

With respect to Plaintiffs' fraud and fraudulent misrepresentation claims, Defendants argue that the Complaint does not assert facts that would establish that Dartmouth knew of Tiversa's alleged scheme, and that Dartmouth was therefore dishonest or deceptive in any way.  ECF No. 262 at 28.  They further argue that LabMD cannot establish Dartmouth had any reason to make false representations and, absent a showing of willful intent, Plaintiffs' claims for common law fraud and fraudulent misrepresentation fail.  Id.  Finally, Dartmouth argues that fraud and fraudulent misrepresentation claims require a showing of Plaintiffs' reliance on the statements to their detriment.  Dartmouth never made any statements to LabMD, and LabMD has failed to allege why or how it would have relied on such a statement.  Id.

In response, Plaintiffs suggest that the Dartmouth Defendants were "financially motivated to lie" because their fraud could lead to additional grant money, the "lifeblood of the academician." ECF No. 283 at 7.  Plaintiffs do not, however, identify any purported reliance on Dartmouth's statements or damages resulting from that reliance, and they do not respond to Dartmouth's argument in this regard.  Accordingly, these claims are also properly dismissed because they are substantively deficient.

### c.  Morgan Lewis and Kline

#### i.    Substantive Deficiency

##### (1) Fraud and Fraudulent Misrepresentation

Morgan Lewis argues that Plaintiffs' fraud and fraudulent misrepresentation claims fail, because Plaintiffs do not allege that Morgan Lewis made any representations at issue, let alone any representations to Plaintiffs.  ECF No. 273 at 23.  This prevents Plaintiffs from pleading, as required, the elements of an actionable misrepresentation, justifiable reliance, and damages.  Id.

These Defendants argue that Plaintiffs cannot rely on a third-party's reliance on its statements (here, the FTC), unless that third party induced the plaintiff to act in some manner on which the defrauded party relies.  Id.  (citing UWork.com, Inc. v. Paragon Techs., Inc. 740 S.E.2d 887, 898-99 (Ga. Ct. App. 2013)).  Plaintiffs do not plead that they relied on the FTC's conduct; to the contrary, they actively opposed the FTC's actions.  Id.

Plaintiffs do not respond to Defendants' substantive arguments regarding these claims. Plaintiffs generally argue that Defendants participated in the creation of false, fraudulent, or defamatory statements by helping Tiversa to create the "Tiversa Business Model," which Plaintiffs claim involved Tiversa engaging in the shakedown scheme alleged in its Complaint, and by creating The Privacy Institute, which Tiversa allegedly used to further its cover up.  ECF No. 284 at 22.  Plaintiffs do not, however, identify specific alleged misrepresentations or fraudulent statements made by Morgan Lewis or Kline to Plaintiffs, any purported reliance by Plaintiffs on those statements, or any damages caused as a result of that reliance.  Accordingly, these claims should be dismissed.

### (2) Negligence and Negligent Misrepresentation

Defendants also argue that these claims should be dismissed because Morgan Lewis, as counsel for Tiversa, owed no duty to Plaintiffs.  With respect to Plaintiffs' negligent misrepresentation claim, Morgan Lewis argues that Plaintiffs fail to show how they were "foreseeable persons" who would receive Morgan Lewis's legal advice, beyond conclusory allegations. ECF No. 273 at 24.  In addition, Plaintiffs' negligence claims fail for lack of proximate cause, because intervening acts and decisions by the FTC caused Plaintiffs' alleged injury.  Id.

Plaintiffs do not respond to these arguments, and therefore these claims should also be dismissed on the merits.

### ii.  Statute of Limitations

Morgan Lewis and Kline also move for dismissal because Plaintiffs' common law claims are time barred.  ECF No. 273 at 21.  Plaintiffs do not specifically address the statute of limitations issue raised by these two Defendants with respect to these claims.  The Court concurs with Morgan Lewis and Kline's argument that Plaintiffs became aware of their injury no later than 2010 and of Morgan Lewis's purported involvement by 2008, therefore these claims had expired before Plaintiffs filed this Complaint in July 2016.  As such, Counts VII, VIII, IX, and X against Morgan Lewis and Kline are also barred by the statute of limitations.

### d.  Tarquinio

### i.  Substantive Deficiency

Tarquinio argues that these claims should be dismissed as substantively deficient, because Plaintiffs' allegations rest on legal conclusions unsupported by factual allegations.  ECF No. 265 at 38.  Plaintiffs do not specify the false statements or omissions made by Tarquinio, how the Plaintiffs relied on such statements or omissions, or when or to whom they were made, and do not identify any facts supporting their negligence claim.  Id.  In their Brief in Opposition, Plaintiffs do not respond to Tarquinio's arguments as it relates to the merits of these claims.  Accordingly, dismissal is also proper on this basis.

### ii.  Statute of Limitations

Tarquinio also moves for dismissal because Plaintiffs' common law claims are time barred. Id. at 32-33.  Plaintiffs do not specifically address statute of limitations issue raised by Tarquinio with respect to these claims.  The Court concurs with Tarquinio's argument that Plaintiffs were

aware of the injury and the source of their injury by no later than 2010.  As such, Counts VII, VIII, IX, and X against Tarquinio are also barred by the statute of limitations.

### 5.  Claims Against Doe Defendants

Plaintiffs have asserted Counts I through XII against ten unidentified Doe Defendants, whom Plaintiffs describe as "as-yet identified individual or entities that actively participated in and/or materially benefited from the illicit conduct detailed herein."  ECF No. 1 ¶ 54.  It has been over three years since Plaintiffs filed this action, and Plaintiffs never specifically identified the names of the Doe Defendants.  Because these Defendants have not been properly identified, personal service was never effectuated pursuant to Federal Rule of Civil Procedure 4(e), and no attorney has entered an appearance on their behalf.  Under Federal Rule of Civil Procedure 4(m), service must be made upon a Defendant within 90 days after filing of a Complaint.  This was not done.  As a result, the individual Defendants identified as "Does 1-10" should be dismissed pursuant to Rule 4(m).

### 6.  Common Law Conspiracy and Attorneys' Fees Claims (Counts XI and XII)

Plaintiffs assert a common law conspiracy claim (Count XI) and claim for attorneys' fees (Count XII) against all Defendants except Tiversa, Boback, and Johnson.  Because Plaintiffs' common law conspiracy claim relies upon the commission of an underlying tort and the Court finds that Plaintiffs' tort claims should be dismissed, Count XI should also be dismissed.  See Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 405 (3d Cir. 2000); BMC-The Benchmark Mgmt Co. v. Ceebraid-Signal Corp., 292 F. App'x 784, 787 (11th Cir. 2008)).

With respect to Plaintiffs' claim for attorneys' fees under O.C.G.A. § 13-6-11, this statute "does not create an independent cause of action.  [It] merely establishes the circumstances in which

a plaintiff may recover the expenses of litigation as an additional element of his damages." Brown v. Baker, 398 S.E.2d 797, 799 (Ga. Ct. App. 1990); see also Aetna Cas. & Sur Co. v. Liebowitz, 570 F. Supp. 908, 912-13 (E.D.N.Y. 1983) (explaining that the RICO statute "permits an award of attorney's fees only to a plaintiff who has obtained a final judgment on the merits"); Daniel v. Smith, 597 S.E.2d 432, 437 (Ga. Ct. App. 2004) (analyzing claim for attorneys' fees under Ga. Code Ann. § 13-6-11 and explaining that "[a] plaintiff is entitled to recover attorney fees only for that portion of the fees which are allocable to the attorney's efforts to prosecute a successful claim against a defendant") (quoting Premier Cabinets v. Bulat, 583 S.E.2d 253 (Ga. Ct. App. 2003)). Because the Court recommends that all of Plaintiffs' claims be dismissed, their request for attorneys' fees should also be dismissed.

### E.    CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motions to Dismiss, ECF Nos. 261, 264, 267, 270, 272 and 274, and dismiss Plaintiffs' Complaint.  It is further recommended that Plaintiffs' claims be dismissed with prejudice.  "If a complaint is vulnerable to Rule 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips v. Cty of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008). Having reviewed all of Plaintiffs' filings in this case, however, the factual averments do not suggest any basis for the existence of a viable legal claim and the claims asserted are barred by the applicable statutes of limitation.  Accordingly, the Court finds that permitting Plaintiffs to amend their pleadings would be futile, and it therefore recommends dismissal of all claims with prejudice.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.

Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street,

Room 3110, Pittsburgh, PA 15219.  Failure to timely file objections will waive the right to appeal.

Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).  Any party opposing objections may

file their response to the objections within fourteen (14) days thereafter in accordance with Local

Civil Rule 72.D.2.

Dated: November  15 , 2019                    Respectfully submitted,

                                              MAUREEN P. KELLY
                                              UNITED STATES MAGISTRATE JUDGE

cc:     The Honorable Marilyn J. Horan
        United States District Judge

        All counsel of record by Notice of Electronic Filing